**In re Johnny LUNA, Relator.**

**No. 01–03–01055–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Sept. 9, 2004.

Rehearing Overruled Nov. 5, 2004.

G. Scott Fiddler, Law Office of G. Scott Fiddler, P.C., Houston, TX, for Relator.

Erica Harris, Susman Godfrey, L.L.P., Houston, TX, Real Party In Interest.

Panel consists of Justices TAFT, KEYES, and BLAND.

## OPINION

TIM TAFT, Justice.

This appeal concerns the substantive unconscionability of a binding arbitration agreement between an employer and an at-will employee. Relator, Johnny Luna, seeks mandamus relief from the trial court's order granting the motion to compel arbitration and to stay litigation of real parties in interest, Poly–America, L.P. d/b/a Pol–Tex International and Poly–America GP, L.L.C. (collectively, Poly–America).[1] In one issue, Luna challenges several provisions contained in the arbitration agreement. We determine whether the following provisions contained in the arbitration agreement are substantively unconscionable: those (1) splitting arbitration fees, with a cap on the employee's cost at the highest month's salary of the preceding year, (2) limiting available remedies, (3) limiting discovery, (4) disallowing an arbitrator's application of a "good

---

1. The underlying lawsuit is *Johnny Luna v. Poly–America, L.P. d/b/a Pol–Tex International and Poly–America GP, L.L.C*, in the 344th District Court of Chambers County, TX, trial court cause number 20504. The Honorable Carrol E. Wilborn, Jr., presiding.

cause" standard to employment claims, and (5) making the arbitration agreements binding as to any future claims that the employee could bring, even for disputes arising after the employer-employee relationship had terminated. We also determine whether all of the above-mentioned provisions, as a whole, render the arbitration agreement substantively unconscionable. We conditionally grant mandamus relief.

## Background

Poly–America hired Luna on October 21, 1998 to work as an operator in Poly–America's plant in Mont Belvieu, Texas. When he was hired, Luna signed an arbitration agreement. Luna continued to work for Poly–America, and, on July 18, 2002, Luna signed another document acknowledging that he had received the June 2002 employee handbook. The handbook contained another arbitration agreement with substantively similar provisions. Luna was injured, and he filed a worker's compensation claim on December 7, 2002. On February 11, 2003, Poly–America terminated Luna's employment, and Luna subsequently sued Poly–America under the Texas Labor Code, alleging wrongful discharge and retaliation. *See* TEX. LAB.CODE ANN. § 451.001 (Vernon Supp.2004–2005). The trial court granted Poly–America's motion to compel arbitration and to stay litigation on September 19, 2003.

## Burden of Proof and Standard of Review

■■■ Mandamus is the proper means to review an order compelling arbitration under the Federal Arbitration Act (FAA).[2] *In re Am. Homestar of Lancaster, Inc.*, 50 S.W.3d 480, 483 (Tex.2001). Mandamus will lie when a trial court has clearly abused its discretion. *In re MHI P'ship, Ltd.*, 7 S.W.3d 918, 921 (Tex. App.-Houston [1st Dist.] 1999, orig. proceeding).

■■■ In determining the validity of arbitration agreements, courts should apply state-law principles governing the formation of contracts. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995). Arbitration agreements are strongly favored under Texas law. *Prudential Sec., Inc. v. Marshall*, 909 S.W.2d 896, 898 (Tex. 1995). Thus, the burden of proving unconscionability is on the party opposing arbitration. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 756 (Tex.2001). An agreement to arbitrate is valid unless grounds, such as fraud or unconscionability, exist at law or in equity for its revocation, as with any contract. *Emerald Tex., Inc. v. Peel*, 920 S.W.2d 398, 402 (Tex.App.-Houston [1st Dist.] 1996, no writ).

## Unconscionability

Luna asserts that the arbitration agreement is unenforceable because several of its provisions are substantively unconscionable.

■■■ The purpose of arbitration is to streamline the dispute-resolution process and to minimize costs. *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 269 (Tex.1992); *see Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31, 111 S.Ct. 1647, 1655, 114 L.Ed.2d 26 (1991) (recognizing that parties who agree to arbitrate trade the opportunity for review and procedures of the courtroom for the simplicity, informality, and expedition of arbitration). As a result, the fact that arbitration does not afford parties all the rights that litigation

---

**2.** Both arbitration agreements specified that they were subject to the FAA, and both parties agree that the FAA applies. *In re Auto Nation USA Corp.*, No. 01–03–00488, 2004 WL 858840, at *2 (Tex. App.-Houston [1st Dist.] (April 22, 2004, no pet. h.)).

offers is built into the nature of the process, and the parties presumably realize that they may be waiving some litigation rights in order to gain the convenience and savings associated with arbitration.

■ The FAA allows for arbitration in the employment context. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 113–15, 121 S.Ct. 1302, 1308–09, 149 L.Ed.2d 234 (2001); *In re Halliburton Co.*, 80 S.W.3d 566, 570 (Tex.2002). The advantages of the arbitration process do not disappear in the employment arena. *See id.* Thus, arbitration agreements in the employment context are valid, irrevocable, and enforceable, save upon such grounds as exist in law or equity for the revocation of any contract. *See id.*

■ In *Halliburton*, the Texas Supreme Court considered substantive unconscionability to be one such potential ground. *Id.*, 80 S.W.3d at 572 ("We therefore clarify that courts may consider both procedural and substantive unconscionability of an arbitration clause in evaluating the validity of an arbitration provision."). Under Texas law, "the basic test for unconscionability is whether, given the parties' general commercial background and the commercial needs of the particular trade or case, the clause is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract." *FirstMerit Bank*, 52 S.W.3d at 757. This principle is designed to prevent unfair surprise and oppression, not to disturb allocation of risks due to superior bargaining power. *Id.* Substantive unconscionability refers to the fairness of the arbitration provision itself, as opposed to procedural unconscionability, which refers

to the circumstances surrounding the adoption of the arbitration provision. *See Halliburton*, 80 S.W.3d at 571. As stated above, Luna had the burden to prove that the agreement's provisions were substantively unconscionable. *See FirstMerit Bank*, 52 S.W.3d at 756.

## A. Costs of Arbitration

■ Luna asserts that the arbitration agreement's cost-allocation provisions are substantively unconscionable because they require him to pay more than a nominal fee for the arbitration. Specifically, the agreement in the employee handbook provides:

All fees charged by the Mediator shall be divided equally between the Parties. All fees associated with the Arbitration (including, but not limited to, the Arbitrator's fee, court reporter fees, and fees to secure a place for the hearing, if any) shall be divided equally between the Parties. However, the total fees incurred by Employee shall not exceed the gross compensation earned by the Employee in Employee's highest earning month in the twelve months prior to the time the arbitrator issues his award.

Luna estimated that his potential cost based on the foregoing provision could be as much as $4,550.[3] The affidavit of Peter Costea, an experienced employment lawyer, established that the average cost for an arbitration in Harris County in cases similar to Luna's would be more than $20,000. Luna stated in his affidavit that two attorneys refused to take his case on a contingency basis due to the arbitration agreement, and he also stated that he would be unable to afford the arbitration

3. This figure was based on Luna's estimated highest monthly pay of $3,300, plus an average cost of $1,000 for the mandatory mediation (Peter Costea's affidavit established that the cost for a full day of mediation in Harris County ranged from $750 to $1200 per side), plus an additional $250 for district court filing fees in the event that the parties were unable to come to agree on a suitable arbitrator.

fees. Luna's evidence as to cost and his inability to pay was uncontroverted. Based on this evidence, Luna argues that the cost was so prohibitive that the cost provision should have been found substantively unconscionable.

Luna argues that the agreement's cost provisions are substantively unconscionable because, in *Halliburton*, the supreme court found that a cost provision that imposed only a $50 fee on the employee was substantively conscionable, whereas the fees assessed against Luna here are 91 times that amount. *See Halliburton*, 80 S.W.3d at 572. Luna's argument employs the logical fallacy known as "denying the antecedent." [4] Applying that logical fallacy, Luna argues that (1) under *Halliburton*, if a cost provision in an arbitration agreement requires an employee to pay $50 (or less), it is conscionable; (2) Poly–America's cost provision required the employee to pay more than $50; (3) therefore, the provision was unconscionable.

We agree with Poly–America's contention that the Texas Supreme Court did not intend to require every arbitration agreement to provide the same protection as the arbitration agreement in *Halliburton*. In *Halliburton*, the Texas Supreme Court reversed the trial court's order denying an employer's motion to compel arbitration. *See Halliburton*, 80 S.W.3d at 573. The court held that the agreement provided employees with adequate protection for several reasons, one of which was that the

employer agreed to pay all of the arbitration expenses except for a $50 filing fee. *See id.* at 572. The court cited *Cole v. Burns International Security Services*[5] as an example of another court that had upheld an arbitration agreement with similar provisions. *See Halliburton*, 80 S.W.3d at 572. However, we do not think that, by finding the cost provisions in *Halliburton* to be conscionable, the Texas Supreme Court meant, by implication, that provisions imposing greater costs on the employee were necessarily unconscionable. Indeed, in Texas, an arbitrator's decision requiring an employee to pay more than $50 in arbitration fees has been upheld. *See, e.g., Williams v. Cigna Fin. Advisors, Inc.*, 197 F.3d 752, 763 (5th Cir.1999) (upholding arbitration panel's decision requiring employee to pay half of all forum fees).

Luna argues that, based on the *Halliburton* court's citation to *Cole*, we should adopt the position set forth in *Cole* (and in some other federal court decisions) that it is per se substantively unconscionable to impose anything more than a nominal fee on a discharged employee for arbitration.[6] However, this position is in conflict with the holding of *Pony Express Courier Corp. v. Morris*. In *Pony Express*, the arbitration agreement between the employer and the employee contained a fee-sharing provision. *See id,* 921 S.W.2d 817, 822 (Tex. App.-San Antonio 1996, no pet.). That court asserted that equal costsharing is a standard feature of arbitration clauses.

---

**4.** Denying the antecedent is an invalid argument of the general form: "If *p*, then *q*. Not *p*. Therefore, not *q*." *Torpharm, Inc. v. Ranbaxy Pharm., Inc.*, 336 F.3d 1322, 1329 n. 7 (Fed. Cir.2003).

**5.** 105 F.3d 1465, 1482 (D.C.Cir.1997).

**6.** *See Cole,* 105 F.3d at 1484–85 (asserting that, although filing fees and other administrative costs are not problematic, requiring certain discharged employees to pay arbitra-

tor's fees would deprive them opportunity to pursue statutory claims); *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1177–78 (9th Cir. 2003) (invalidating fee-splitting provision under California law); *see also Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 786 (9th Cir.2002) (holding that, under California law, fee provision is unenforceable when employee bears *any* expense beyond usual costs associated with bringing court action).

*See id.* The court stated that a fee-splitting provision contained in an arbitration agreement is not, by itself, unconscionable. *See id.*

However, the *Pony Express* court noted that it could not determine whether the agreement as a whole was unconscionable because the parties did not provide sufficient facts for the court to make that determination. *See id.* Here, the uncontroverted testimony of Costea established that the arbitration will almost certainly force Luna to pay the maximum capped amount to arbitrate his case. In addition, Luna stated that he could not afford these arbitration fees, which amount to more than one-half of his annual compensation.

Poly–America asserts that, under Texas law, the cost provision is not unconscionable. Poly–America bases its argument on *Pony Express* and *In re FirstMerit Bank.* However, we have already distinguished *Pony Express* from the present case because the *Pony Express* court did not have sufficient facts before it to determine whether the arbitration agreement could be substantively unconscionable as a whole. *See id.,* 921 S.W.2d at 822. *FirstMerit Bank* is also distinguishable. The real parties in interest in *FirstMerit Bank* were complaining, in part, that the arbitration filing fee was excessive. *See id.,* 52 S.W.3d at 756–57. The court held that it did not need to determine whether the costs of arbitration were excessive because

the arbitration addendum made no reference to the actual costs and there was no evidence that the fees in question would be charged. *See id.* In this case, Costea's unrebutted affidavit showed the average costs of an arbitration in Harris County.[7]

Poly–America also relies on two federal cases to support its argument that the cost provisions are not unconscionable: *Bloxom v. Landmark Publishing Corp.,* 184 F.Supp.2d 578 (E.D.Tex.2002), and *Williams v. Cigna Financial Advisors, Inc.,* 197 F.3d 752 (5th Cir.1999). In *Bloxom,* the court held there was no evidence that the costs would be prohibitive. *See id.,* 184 F.Supp.2d at 585 (holding that the plaintiff's mere assertion that the costs were prohibitive was not sufficient to show prohibitive cost). Here, there is unrebutted evidence of the average costs of arbitration in the region.

In *Williams,* the Fifth Circuit Court of Appeals considered whether an arbitrator's order requiring that a discharged employee pay one-half of the arbitral forum fees after the arbitration's conclusion violated public policy. *See id.,* 197 F.3d at 763. The court held that the employee had to demonstrate that paying half of the forum fees "prevented him from having a full opportunity to vindicate his claims effectively or prevented the arbitration proceedings from affording him an adequate substitute for a federal judicial forum."

---

**7.** The *FirstMerit Bank* court also noted that, under the American Arbitration Association (AAA) rules, the administrative fees may be deferred or reduced upon a showing of extreme hardship by any party. *Id.* Poly–America argues that Luna would thus be entitled to have the arbitration fees deferred or reduced if he showed extreme hardship. However, the extreme-hardship allowance for administrative fees covers only administrative services; it does not cover the arbitrator's expenses or compensation, reporting services, or any post-award charges incurred in enforcing any award. *See* American Arbitration Association, Commercial Arbitration Rules and Mediation Procedures R–49. Thus, even if Luna did qualify for a reduction or deferment, that reduction or deferment would not apply to the arbitrator's fees or expenses. Costea asserted in his affidavit that, in his opinion, the arbitrator's fees alone in this case would range from $9,000 to $22,400. As a result, even assuming that Luna could show extreme hardship, he would still have to pay the maximum capped amount.

*Id.* at 764. To meet that standard, the employee needed to show that he was unable to pay one-half of the forum fees or that it was prohibitively expensive for him to pay the fees, which he failed to show. *See id.* at 764–65 (holding that, when appellant had already arbitrated his claims, paid part of arbitration fees, and testified that his salary for the year was in excess of $100,000, appellant failed to show prohibitive expense). However, the facts in *Williams* are plainly distinguishable from the facts in this case. Luna's evidence showed that he would not be able to afford the arbitration fees and that he was having difficulty obtaining an attorney due to the arbitration agreements.

Although, under Texas law, the *Pony Express* decision indicates that the cost provisions here would not be unconscionable by themselves, the evidence that Luna provided as to arbitration costs and his inability to pay them shows that, unlike the employees in *Pony Express* or *Williams,* the cost provisions did place an oppressive burden on Luna. Accordingly, when determining whether the arbitration agreement as a whole was so one-sided as to render it substantively unconscionable, the costs provision weighs heavily toward a finding of substantive unconscionability. *See Pony Express,* 921 S.W.2d at 822 (implying that it is necessary to look at the provisions of an agreement as a whole to determine whether it is substantively unconscionable).

## B. Limitation of Remedies

■ Luna asserts that the arbitration agreement's prohibition of punitive damages and reinstatement remedies is substantively unconscionable because those remedies are allowed under the Texas Labor Code. *See* TEX. LAB.CODE ANN. § 451.002 (Vernon 1996).

As a threshold matter, we note that Luna's amended petition sought both reinstatement and punitive damages, the latter based on allegations of actual malice on the part of Poly–America. Section 451.002 provides for "reasonable damages incurred by the employee as a result of the violation." *Id.* The Texas Supreme Court has recognized that the statute allows punitive damages only when the employee can show that the employer displayed actual malice. *Continental Coffee Prods. Co. v. Cazarez,* 937 S.W.2d 444, 454 (Tex.1996).

■ Provisions prohibiting punitive damages in arbitration agreements are generally enforceable. *Investment Partners, L.P. v. Glamour Shots Licensing, Inc.,* 298 F.3d 314, 318 n. 1 (5th Cir.2002). In a gender-discrimination case against an employer, a federal court applying Texas law has upheld an arbitration agreement that prohibited punitive damages and severely limited the employee's statutory right to reinstatement. *See Kinnebrew v. Gulf Ins. Co.,* C.A. No. 3:94–CV–1517–R, 1994 WL 803508, at *1 (N.D.Tex. Nov.28, 1994) (denying employee's claim that denial of punitive damages and allowing reinstatement "only if money damages are insufficient as a remedy" invalidated the arbitration agreement). However, the court in *Kinnebrew* noted that the employee did not cite any case supporting her position that she should not be forced to arbitrate because the remedies allowed under the arbitration policy denied her substantive rights to which she would have been entitled in a judicial forum. *See id.* at *2. Here, Luna cites several cases in support of his contention that the limitation of remedies deprives him of rights that he could assert in a judicial forum.

Luna again claims that *Halliburton* is determinative as to the provisions limiting remedies. This contention is based on the

same logical fallacy that Luna employed in arguing that the cost provisions were necessarily unconscionable. In *Halliburton,* the Texas Supreme Court held that the agreement in that case was not substantively unconscionable, in part because all remedies available in court were also available in arbitration, but the court did not hold that arbitration agreements can never limit remedies. *See id.,* 80 S.W.3d at 572.[8]

■ As shown by *Pony Express,* Texas law does not require that all statutory remedies be provided in arbitration proceedings. *See id.,* 921 S.W.2d at 822. Under the arbitration agreement, Luna would be entitled to reasonable damages as allowed by the Texas Labor Code; however, the agreements prohibit reinstatement, which is also available under the Code. *See* TEX. LAB.CODE ANN. § 451.002. In addition, under the arbitration agreement, Luna would be precluded from seeking punitive damages based on proof of actual malice, a remedy that is allowed under the Code. *See id.*

Although preclusion of statutory remedies may not always weigh toward a finding that the provisions as a whole are substantively unconscionable, their preclusion does so with regard to the statutory remedies at issue in this case because

Luna's claim is one brought for alleged retaliation for filing a worker's compensation claim as part of the overall Worker's Compensation Act. *See* TEX. LAB.CODE ANN. §§ 451.001–.003 (Vernon 1996 & Supp. 2004–2005). The Texas Supreme Court has held that the legislative policy behind the Act dictates that its provisions be construed in favor of the injured worker. *See Kroger Co. v. Keng,* 23 S.W.3d 347, 349 (Tex.2000). In fact, to discourage employers from opting out of the system, the Legislature expressly limited the defenses available to an employer opting out of the Act's provisions. *See id.* Such a policy heightens the scrutiny that should be afforded to arbitration provisions that expressly limit statutory remedies afforded under the Act. In particular, the Act expressly confers upon a prevailing plaintiff a right to "reinstatement in the former position of employment," and the arbitration agreement at issue here expressly abrogates such a right. *See* TEX. LAB.CODE ANN. § 451.002(b).

This is not a case in which the employer is a non-subscriber and the employee made a voluntary pre-injury election to participate in a non-subscribing employer's benefit plan in lieu of exercising common-law remedies. *See, e.g., Lawrence v. CDB*

---

8. Luna also cites *Smith v. Gateway, Inc.* for the proposition that it is unconscionable to limit remedies in an arbitration agreement. *Smith v. Gateway,* No. 03–01–00589–CV, 2002 WL 1728615(Tex.App.-Austin July 26, 2002, no pet.) (not designated for publication). In *Smith,* the court did not discuss the substance of the provisions that the arbitrator had found unconscionable; the court merely noted that the arbitrator had found them to be unconscionable. *See Smith,* 2002 WL 1728615, at *3. Thus, *Smith* is not specific enough to be determinative in this case. The other decisions that Luna cites are from federal courts applying the laws of other states. These cases demonstrate the extreme ends of remedy limitations—from holding that an arbitration agreement cannot deny *all* statutory reme-

dies, although limitation of some remedies is acceptable, to holding that an arbitration agreement cannot waive *any* statutory remedy whatsoever. *See Paladino v. Avnet Computer Techs., Inc.,* 134 F.3d 1054, 1057 (11th Cir. 1998) (depriving employees of any arbitral award for Title VII damages); *Powertel, Inc. v. Bexley,* 743 So.2d 570, 576–77 (Fla.App. 1999) (relying on *Paladino* to support the assertion that arbitrator must provide all statutory remedies allowed under Florida's Deceptive and Unfair Trade Practices Act); *Rembert v. Ryan's Family Steak Houses, Inc.,* 235 Mich.App. 118, 596 N.W.2d 208, 226 (1999) (holding that, under Michigan law, arbitration agreements must not waive any statutory remedy).

*Servs., Inc.,* 44 S.W.3d 544, 545 (Tex.2001). Rather, this is the kind of agreement that "requires a prospective employee, as a condition to receipt or retention of employment, to agree to limit the employer's liability." *Id.* at 550 (quoting *Brito v. Intex Aviation Servs., Inc.,* 879 F.Supp. 650, 654 (N.D.Tex.1995)). The latter is disfavored because it contravenes the worker's compensation scheme. *See id.* Moreover, it is undisputed in the record before us that Poly–America is a subscriber under the Worker's Compensation Act and thus a recipient of the benefits that the Act affords employers. Having availed itself of the benefits of the Act on the one hand, Poly–America seeks to enforce the arbitration agreement's limits on the employee's right of reinstatement on the other hand. Unlike the plan elections offered by non-subscribers in *Lawrence,* a limitation by a subscribing employer strikes at the core of the legislative policy concerns addressed by the Act.

Thus, preclusion of the two substantive statutory remedies here tends to weigh toward a finding that the agreement's provisions as a whole are substantively unconscionable.

## C. Shortening of the Statute of Limitations

 Luna also asserts that the provision shortening the statute of limitations from two years to one year is unconscionable. The provision states that "[t]he party seeking to arbitrate a dispute must submit written notice of claim within the earlier of one year or the time period prescribed by the statute or common law cause of action under which the claim is brought." Poly–America does not dispute that the applicable statute of limitations for wrongful discharge would be two years under the Labor Code. *See Johnson & Johnson*

*Medical, Inc. v. Sanchez,* 924 S.W.2d 925, 927 (Tex.1996).

The Texas Supreme Court has allowed the statute of limitations to be modified in an arbitration agreement involving a claim of wrongful discharge. *See EZ Pawn Corp. v. Mancias,* 934 S.W.2d 87, 89 (Tex. 1996) (acknowledging that parties' arbitration agreement shortened statute of limitations to 180 days). Here, the shortened limitations provision applies equally to both parties. Moreover, Luna filed his claim within the one-year limit under the arbitration agreement, and thus the provision as applied to these facts did not render the agreement unconscionable.

Under the circumstances of this case, this provision does not weigh in favor of a finding that the arbitration agreement as a whole was substantively unconscionable.

## D. Limitations on Discovery

 Luna asserts that the discovery limitations contained in the arbitration agreement are substantively unconscionable because they benefit only Poly–America. Specifically, Luna points to the following provisions as unconscionable: (1) allowing each side one deposition; (2) disallowing requests for admissions; (3) disallowing discovery of Poly–America's financial information; and (4) requiring confidentiality on all aspects of arbitration. The agreement also allows each side to serve one set of 25 interrogatories and to serve one set of 25 requests for production, inspection of documents, or tangible things. Both sides are also permitted to designate experts and to issue subpoenas.

Luna concedes that all of the discovery limitations, with the exception of the provision concerning financial information, apply equally to both Luna and Poly–America. Luna argues that these provisions are still unconscionable because they were constructed to favor only Poly–

America. Luna offered the affidavit of Costea to show that the provisions regarding depositions, requests for admissions, and confidentiality work exclusively to Poly–America's advantage. Specifically, Costea stated that, in a case such as this, on average, an employee will need to take three to five depositions, while the employer will need to take only the deposition of the complaining employee. Nevertheless, because Luna stated in his affidavit that David Davenport was his supervisor and that Davenport was the representative of Poly–America who harassed him and terminated his employment, the trial court could have concluded that Luna would not need to take more than the deposition of Davenport.

Luna cites four cases to support his argument that discovery limitations are unconscionable, but each of those decisions is distinguishable from this case and contrary to Texas law. In *Ferguson v. Countrywide Credit Industries, Inc.*, the arbitration agreement limited the number of subjects that could be included in the deposition of a corporate representative, but did not similarly limit the subjects included in employee depositions. *See id.*, 298 F.3d 778, 786 (9th Cir.2002). The Ninth Circuit Court of Appeals held that the discovery provisions were not per se unconscionable, but contributed to the overall pattern of unconscionability throughout that agreement. *Id.* at 787. In this case, there is no such limitation of deposition subjects in favor of Poly–America.

The arbitration agreement in *Hooters of America, Inc. v. Phillips* is distinguishable because that agreement contained two discovery requirements for the employee that did not apply to the employer, in addition to an arbitrator-selection process that was biased in favor of the employer. *See id.*, 173 F.3d 933, 938–39 (4th Cir.1999). In *Geiger v. Ryan's Family Steak Houses,*

*Inc.*, the arbitration agreement allowed one deposition per side as of right, but allowed additional depositions at the discretion of a panel "stacked against the employee in the first place." *See id.*, 134 F.Supp.2d 985, 996 (S.D.Ind.2001). Here, there is no allegation that the selection of arbitrators is one-sided. Similarly, the case that Luna cites for the proposition that the confidentiality requirement unconscionably impedes discovery is not on point. *See Torrance v. Aames Funding Corp.*, 242 F.Supp.2d 862, 875 (D.Or.2002). In that case, the court found that the confidentiality agreement was unconscionable because it involved consumer fraud, which is a public-interest problem. *See id.* (holding that confidentiality provision affected so many persons that it would put lender in "vastly superior legal posture").

We thus hold that the discovery provisions in this case that applied equally to both parties are not per se substantively unconscionable, especially when Texas law permits discovery to be eliminated entirely in some arbitration agreements. *See Pony Express*, 921 S.W.2d at 822 (asserting that discovery may be limited or eliminated in some arbitration agreements).

We also disagree with Luna's assertion that the provision allowing Poly–America limited access to Luna's financial information, although completely denying Luna any access to Poly–America's financial records, is substantively unconscionable. Luna argues that he will be unable to rebut "certain reasons for discharge" without access to Poly–America's financial condition. The arbitration agreements state that "[f]inancial information about either party is not relevant and shall not be discoverable, with the exception that information about employee's earnings is relevant and shall be discoverable if employee is seeking lost wages, back pay, and/or front pay." Plainly, the arbitration agree-

ment puts the employer and employee on an unequal footing. Luna, however, offered no evidence to demonstrate the specific relevance of Poly–America's financial condition to the discharge decision. Without such a showing of relevance, we cannot determine the financial condition's impact in the overall agreement. Accordingly, under the circumstances of this case, the provisions limiting discovery do not weigh toward a finding of overall substantive unconscionability.

## E. Alterations to Standard of Proof

 Luna asserts that the arbitration agreement unconscionably prohibits the arbitrator from considering whether Poly–America had a good reason for terminating Luna. We disagree with Luna's interpretation of the agreement.

The provision in question stated that "[t]he arbitrator shall not have the authority to alter the parties' at-will relationship or to apply a 'just cause' or 'good cause' standard to claims relating to Employee's claims concerning his employment or separation therefrom." The general rule in Texas is that "employment may be terminated by the employer or the employee at will, for good cause, bad cause, or no cause at all." *Montgomery County Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex.1998). Luna's employment was at will. The provision in the arbitration agreement simply prohibits the arbitrator from applying a "good cause" standard instead of Texas's traditional "at-will" standard to employment cases; the clause does not prohibit the arbitrator from inquiring as to the reason for termination. Accordingly, this provision does not weigh in favor of a finding of overall substantive unconscionability.

## F. Scope of Arbitration Agreement

Luna argues that the provision that equally binds both parties to arbitrate any

claims that they might have against each other in the future is substantively unconscionable because he would have to arbitrate even those claims that may arise in the future and that do not relate to his employment.

Luna contends that he could have claims that do not relate to his employment in the future, such as a slander or a personal injury claim, and that it is unconscionable that these claims be subject to the arbitration agreement. However, the provision applies equally to Poly–America. If Luna were to trespass on Poly–America's property, that claim against Luna would be subject to the arbitration agreement even though it has nothing to do with Luna's employment. Because both parties are equally bound to arbitrate any future claims against each other, the provision is not so one-sided that it is substantively unconscionable. *See FirstMerit Bank*, 52 S.W.3d at 757. Accordingly, this provision does not weigh toward an overall finding of substantive unconscionability.

## G. Unconscionability of Agreement as a Whole

 Luna asserts that, even if none of the provisions in the agreement is unconscionable by itself, the agreement as a whole is so unfair as to be unconscionable.

*Pony Express* clearly indicates that it is appropriate to determine whether an arbitration agreement is unconscionable as a whole, even if the individual provisions considered in isolation are not substantively unconscionable. *See id.*, 921 S.W.2d at 822 (holding that trial court abused its discretion by determining unconscionability without sufficient facts before trial court to determine if agreement was unconscionable as a whole). Although we believe that *Halliburton* did not set out specific requirements that must be met in every

arbitration agreement, *Halliburton* does provide guidance as to what terms are acceptable with regard to arbitration costs, discovery, and remedy limitations. *See id.*, 80 S.W.3d at 572. *Halliburton* upholds an agreement that requires the employee to pay only a $50 filing fee, allows $2,500 for the employee to consult an attorney, allows the same discovery afforded under the Federal Rules of Civil Procedure, and allows all remedies that could be pursued in court. *See id.*

Although it is not necessary for Poly–America's arbitration provisions to be equivalent to the provisions approved of in *Halliburton,* Luna has shown with unrebutted evidence that two of the provisions in Poly–America's arbitration agreement create a much heavier burden for him than those approved in *Halliburton.* The provisions pertaining to arbitration costs and remedy limitations are particularly burdensome when considering their combined effect. Luna is required to pay arbitrator's expenses equal to his highest month's gross compensation for the 12 months prior to issuance of the arbitrator's award. Luna showed that, given the average cost of arbitrations in Harris County, he will very likely incur costs up to the maximum. In addition to these costs, Luna will be precluded from reinstatement to his former job and from collection of punitive damages, to both of which he may have been entitled under the Texas Labor Code. *See Cazarez,* 937 S.W.2d at 454 (asserting that employee may be entitled to punitive damages when he can prove actual malice); *see also* TEX. LAB.CODE ANN. § 451.002(b).

Luna also presented some evidence that the agreement gears its discovery provisions to favor Poly–America, in particular with regard to producing financial information. Under these facts, however, Luna has not demonstrated that the discovery limitations alone render the agreement un-

conscionable. As for the other provisions, we have found that, under the circumstances of this case, they do not weigh in favor of a finding of substantive unconscionability.

■ It is not the number of provisions weighing toward an overall finding of substantive unconscionability that matters as much as the cumulative one-sidedness of the burden that those provisions place on a party.

The United States Supreme Court has noted that, as long as the prospective litigant can effectively vindicate his statutory cause of action in the arbitral forum, the statute continues to serve its remedial and deterrent function. *See Gilmer,* 500 U.S. at 28, 111 S.Ct. at 1653 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth,* 473 U.S. 614, 637, 105 S.Ct. 3346, 3359, 87 L.Ed.2d 444 (1985)). Here, the high cost of arbitration, combined with the limitation of damages and reinstatement in the agreement, essentially deprive Luna of the opportunity to vindicate his claim effectively in the arbitral forum under the Texas Labor Code. Such deprivation is not consistent with the strong legislative policy behind the Worker's Compensation Act. *See Kroger,* 23 S.W.3d at 349–50. Although Luna has not shown that any of the other provisions is so one-sided in Poly–America's favor as to be substantively unconscionable, the one-sidedness of the cost and remedy provisions tend to render the agreement as a whole unconscionable under the facts and circumstances of this case.

■ Poly–America argues that *Ferguson,* the Ninth Circuit Court of Appeals case on which Luna relies for his contention that the agreement should be considered as a whole with regard to unconscionability, is not applicable to this case because it applies a different standard for unconscionability. *See id.,* 298 F.3d at

784. However, Poly–America fails to acknowledge, as *Pony Express* plainly recognizes, that Texas courts must consider the arbitration agreement as a whole. *See id.*, 921 S.W.2d at 822. As the *Pony Express* court also indicated, the fact that individual provisions may not be unconscionable in certain circumstances does not mean that a particular agreement cannot be unconscionable when considered as a whole. *See id.*

Accordingly, we hold that the arbitration costs imposed on Luna, who provided evidence of the costs of arbitration and of his inability to pay, in addition to the limitations on Luna's opportunity to be reinstated and to recover punitive damages, render the arbitration agreement, when considered as a whole, so one-sided in Poly–America's favor and so oppressive to Luna as to be substantively unconscionable, given the strong legislative policy behind the Worker's Compensation Act.

### Severability

Poly–America argues that, even if some of the arbitration provisions are found to be unconscionable, they can be severed from the arbitration agreement, pursuant to the severability clause contained in the agreement, so that the parties can still be compelled to arbitrate. Poly–America relies on two Fifth Circuit Court of Appeals cases for the proposition that unconscionable provisions can be severed from an otherwise acceptable arbitration agreement. However, both of those cases are distinguishable from this case. In *Carter v. Countrywide Credit Industries, Inc.* and *Jones v. Fujitsu Network Communications, Inc.*, the court invalidated only the provision in the agreements that required fee-splitting and ordered the parties to arbitrate with the employers to pay all arbitration costs. *See Carter*, 189 F.Supp.2d 606, 620 (N.D.Tex.2002); *Jones v. Fujitsu Network Communications, Inc.*, 81 F.Supp.2d 688, 693 (N.D.Tex.1999).

In this case, however, there is more than one provision that renders the agreement unconscionable; both the arbitration costs and the remedy limitations imposed on Luna cause the agreement to be unconscionable as a whole. When a portion of an agreement to be severed is integral to the entire agreement, a severability clause cannot save the agreement. *Cf. John R. Ray & Sons, Inc. v. Stroman*, 923 S.W.2d 80, 87 (Tex.App.-Houston [14th Dist.] 1996, writ denied) (holding that because "covenant not to compete" was integral to agreement, it could not be severed from agreement). Because the purpose of arbitration is to afford the parties an alternative forum in which to vindicate their claims, and because the cost provisions and remedy limitations together deprive Luna of his opportunity to vindicate his claim in the arbitral forum, we hold that those provisions are integral to the purpose of the agreement and cannot be severed.

Accordingly, we hold that the trial court abused its discretion in granting Poly–America's motion to compel arbitration. Because we have held that the arbitration agreement is substantively unconscionable, it is unnecessary to address Luna's contention that the agreement should fail for lack of consideration.

### Conclusion

We conditionally grant Luna's petition for writ of mandamus. We are confident that the trial court will comply with our holding. Accordingly, writ will issue only if the trial court does not withdraw its order compelling arbitration.