Petition for Writ of Mandamus Conditionally Granted, Appeal Dismissed,
and Opinion filed March 27, 2008








 

Petition
for Writ of Mandamus Conditionally Granted, Appeal Dismissed, and Opinion filed
March 27, 2008.

 

                                                                                                                                                            

In The

Fourteenth Court of
Appeals

________________________

 

NO. 14-07-00303-CV

____________

 

ASPEN TECHNOLOGY, INC., Appellant

 

V.

 

ABE SHASHA, Appellee

 



On Appeal from the 165th
District Court

Harris County, Texas

Trial Court Cause No. 06-29662



 

NO. 14-07-00469-CV

____________

 

IN RE ASPEN TECHNOLOGY, INC.,
Relator

 



 

ORIGINAL PROCEEDING

WRIT OF MANDAMUS

 



 

O P I N I O N








An employer and
its employee entered into two arbitration agreements C one in which they
did not specify the arbitration rules, arbitration site, or number of
arbitrators and a subsequent agreement in which they specified a
three-arbitrator panel in Boston, Massachusetts, in accordance with the commercial
arbitration rules of the American Arbitration Association. The trial court
compelled arbitration in Houston, Texas, before a single arbitrator under the
first agreement but refused to compel arbitration under the second agreement,
impliedly ruling that the second agreement is illusory and substantively
unconscionable.  We conclude mandamus relief is warranted.  For the reasons
explained below, we direct the trial court to vacate its orders compelling
arbitration under the first agreement and to issue an order compelling
arbitration under the second agreement.  Given this ruling, the employer=s interlocutory
appeal is rendered moot.

I.  Factual and Procedural Background

Appellee/real
party in interest Abe Shasha began his employment in December 2001, with the
predecessor of appellant/relator Aspen Technology, Inc.  At that time, Shasha
signed an agreement regarding his employment, in which he and Aspen=s predecessor
agreed  to arbitrate any and all disputes or controversies that might arise
between Shasha and Aspen=s predecessor, including without
limitation employment disputes (hereinafter A2001 Agreement@).  On October 28,
2005, Shasha signed an agreement regarding his incentive compensation for Aspen
fiscal year 2006 (hereinafter A2006 Agreement@).  In the 2006
Agreement, Shasha agreed that any legal action against Aspen would be settled
exclusively by arbitration before a three-member panel in Boston, Massachusetts
in accordance with the commercial arbitration rules of the American Arbitration
Association (hereinafter AAAA@). 








Early in 2006,
Shasha notified Aspen that he had a dispute regarding his commissions.  In May
2006, Shasha resigned from his position with Aspen and soon thereafter filed
suit against Aspen in the trial court below asserting contract and tort
claims.  Aspen filed a
motion to compel arbitration, relying on both the 2001 Agreement and the 2006
Agreement.  In response, Shasha admitted that he executed both the 2001
Agreement and the 2006 Agreement.  Shasha argued that the arbitration provision
in the 2006 Agreement replaced the arbitration provision in the 2001
Agreement.  Shasha did not dispute that his claims fall within the scope of the
arbitration clause in the 2006 Agreement; rather, Shasha asserted that this
arbitration clause is unenforceable because (1) the clause is illusory given
that Aspen allegedly retains a unilateral, unrestricted right to terminate this
arbitration agreement; and (2) the clause imposes such exorbitant costs on
Shasha that it is substantively unconscionable.  

The trial court granted Aspen=s motion to compel, ordered all claims
to arbitration, and stayed the case pending the conclusion of the arbitration. 
However, the trial court=s first order did not specify the site for the arbitration or
the agreement under which the trial court ordered the parties to arbitrate the
claims.  Confusion arose as to whether the trial court had ordered arbitration
under the 2006 Agreement.  Aspen asserted that the trial court had ordered the
parties to arbitrate the claims in Boston, Massachusetts, under the 2006
Agreement.  Shasha filed a motion for reconsideration and clarification.  In
this motion, Shasha stated that the trial court=s order was ambiguous as to whether
the trial court had compelled the parties to arbitrate the claims under the
2001 Agreement or under the 2006 Agreement.  Shasha asserted that he had no
issue with the court to the extent it intended to compel arbitration under the 
2001 Agreement.  However, to the extent the trial court had ordered arbitration
under the 2006 Agreement, Shasha moved the court to reconsider its rejection of
the two grounds upon which Shasha had asserted that this arbitration agreement
is unenforceable.  Shasha requested the trial court to order the parties to
arbitration under the 2001 Agreement in Houston, Texas, with a single
arbitrator. 








Aspen filed a response in opposition
in which it argued that no clarification was necessary because the trial court
already had ordered the parties to arbitrate in Boston, Massachusetts, under
the 2006 Agreement.  Aspen again presented argument in support of its position
that there is no merit in Shasha=s two objections to the
enforceability of the arbitration clause in the 2006 Agreement.  Aspen asserted
that the Federal Arbitration Act (AFederal Act@) and the Texas Arbitration Act (ATexas Act@) both mandate that Shasha=s claims be arbitrated in Boston,
Massachusetts before a panel of three arbitrators pursuant to the commercial
arbitration rules of the AAA
(ACommercial Rules@) and that the proceedings in the
trial court be stayed pending completion of arbitration.  Aspen submitted to
the trial court a proposed order denying Shasha=s motion.  In this proposed order,
the trial court would compel arbitration in Boston, Massachusetts, before a
panel of three arbitrators pursuant to the Commercial Rules and stay the
proceedings in the trial court until the conclusion of the arbitration. 
Instead of signing this proposed order, the trial court signed an order in
which it granted Shasha=s motion and compelled arbitration in Houston, Texas, with a
single arbitrator under the 2001 Agreement.  Aspen has appealed this order
under section 171.098(a)(1) of the Texas Civil Practice and Remedies Code.  See Tex. Civ. Prac. & Rem. Code Ann. ' 171.098(a)(1)
(Vernon 2005).  Aspen
also filed a petition for writ of mandamus.  This court has consolidated these
two proceedings.

                                                    II. 
Standard of Review








The Federal Act
applies to an arbitration agreement in any contract involving interstate
commerce, to the full extent of the Commerce Clause of the United States
Constitution.  See 9 U. S. C. ' 2 (1999); Allied-Bruce
Terminix Co. v. Dobson, 513 U.S. 265, 277B81, 115 S. Ct.
834, 839B41, 130 L. Ed. 2d
753 (1995); In re L&L Kempwood Assocs., 9 S.W.3d 125, 127 (Tex.
2006).  Shasha does not dispute that the Federal Act applies.  The 2001
Agreement and the 2006 Agreement both involve interstate commerce, and
therefore, the Federal Act applies. Mandamus relief is available when the trial court clearly
abuses its discretion by erroneously denying a party its contracted‑for
arbitration rights under the Federal Act.  See In re D. Wilson Const. Co.,
196 S.W.3d 774, 780B81 (Tex. 2006) (orig. proceeding); In re Igloo Prods.
Corp., 238 S.W.3d 574, 577 (Tex. App.CHouston [14th Dist.] 2007, orig.
proceeding [mand. denied]).  Therefore, Aspen=s right to mandamus relief hinges on
whether the trial court erred by refusing to compel arbitration under the 2006
Agreement.[1]  On mandamus review
of factual issues, a trial court will be held to have abused its discretion
only if the party requesting mandamus relief establishes that the trial court
reasonably could have reached only one decision, and not the decision the trial
court made.  Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992) (orig.
proceeding).  Mandamus
review of issues of law is less deferential.  A trial court abuses its
discretion if it clearly fails to analyze the law correctly or apply the law to
the facts.  In re Cerberus Capital Mgmt., L.P., 164 S.W.3d 379, 382
(Tex. 2005).

In construing the
2006 Agreement, our primary concern is to ascertain and give effect to the
intentions of the parties as expressed in the contract.  Kelley‑Coppedge,
Inc. v. Highlands Ins. Co., 980 S.W.2d 462, 464 (Tex. 1998).  To ascertain
the parties= true intentions, we examine the entire agreement in
an effort to harmonize and give effect to all provisions of the contract so
that none will be rendered meaningless.  MCI Telecomms. Corp. v. Tex. Utils.
Elec. Co., 995 S.W.2d 647, 652 (Tex. 1999).  Whether a contract is
ambiguous is a question of law for the court.  Heritage Res., Inc. v.
NationsBank, 939 S.W.2d 118, 121 (Tex.  1996).  A contract is ambiguous
when its meaning is uncertain and doubtful or is reasonably susceptible to more
than one interpretation.  Id.  However, when a written contract is
worded such that it can be given a certain or definite legal meaning or
interpretation, it is unambiguous, and the court construes it as a matter of
law.  Am.  Mfrs. Mut. Ins. Co. v. Schaefer, 124 S.W.3d 154, 157 (Tex.
2003). 

                                                    III. 
Issues and Analysis

A.      Does this court lack mandamus jurisdiction because the trial
court did not deny a motion to compel arbitration?








Shasha first
argues that this court lacks jurisdiction to consider Aspen=s mandamus petition
because the trial court allegedly did not deny Aspen=s application to
compel arbitration.  According to Shasha, Aspen moved to compel arbitration
under either the 2001 Agreement or the 2006 Agreement, and the trial court
granted this request by compelling arbitration under the 2001 Agreement. 
Though Aspen based its motion to compel on both agreements, in response to
Shasha=s motion for reconsideration and clarification, Aspen relied on the 2006 Agreement and
requested the trial court to order arbitration of Shasha=s claims in Boston, before a panel of
three arbitrators pursuant to the Commercial Rules.  The trial court refused to
do so, and instead, it ordered the parties to arbitrate the claims in Houston,
with a single arbitrator under the 2001 Agreement. Mandamus relief is available
if a trial court abuses its discretion by erroneously denying a party its
contracted‑for arbitration rights under the Federal Act.  See In re D.
Wilson Const. Co., 196 S.W.3d 774, 780B81.  Impliedly finding that the
arbitration clause in the 2006 Agreement is illusory and substantively
unconscionable, the trial court denied Aspen its contracted‑for arbitration rights under the 2006
Agreement, which is governed by the Federal Act.  Therefore, this court has
mandamus jurisdiction to consider whether the trial court clearly abused its
discretion in so ruling.  See In re D. Wilson Const. Co., 196 S.W.3d
774, 780B81. 

B.      Did the trial court err by concluding that the arbitration
clause in the 2006 Agreement is illusory?

Shasha asserted in
the trial court that the arbitration clause in the 2006 Agreement is illusory
because Aspen allegedly retains a unilateral, unrestricted right to terminate
this arbitration agreement.  If one party to an arbitration agreement retains
such a right, then the arbitration agreement is illusory and unenforceable.  See
In re Palm Harbor Homes, Inc., 195 S.W.3d 672, 677 (Tex. 2006).  Shasha
asserts that Aspen retains a unilateral, unrestricted right to terminate the
arbitration provision in the 2006 Agreement based on the following language in
that agreement: 

The incentive
compensation plan administrator (Vice President of Worldwide Sales Operations)
is responsible for the interpretation of the plan.  If the meaning or
interpretation of the plan wording requires clarification after consideration
of all the facts, the Senior Vice President, Worldwide Sales and Business
Development (SVP Sales) or his/her designee(s), if any[,] will issue a written
ruling, which will be final.  In addition, the SVP Sales will be responsible
for the periodic review of the plan and may make revisions from  time to
time. 








(emphasis added). 
The title of the 2006 Agreement is AAspen Technology,
Inc. FY 2006 Incentive Compensation Plan Global Account Manager (GAM).@  In the 2006
Agreement, there is no definition of the term Aplan.@  Shasha asserts
that, under the above language, the SVP Sales may make revisions to the 2006
Agreement from time to time.  Presuming that the above language refers to the
2006 Agreement as Athe plan,@ and presuming
that the SVP Sales may review the 2006 Agreement and make revisions from time
to time, this is not equivalent to stating that the SVP Sales has a unilateral,
unrestricted right to terminate the arbitration provision in the 2006
Agreement.  Under the 2006 Agreement, A[a]ny additional
terms or conditions, or verbal or written agreements between [Shasha] and
[Aspen] will not apply unless explicitly agreed to and approved in a signed
writing by both the SVP Sales and [Shasha].@  








We conclude that,
under the unambiguous language of the 2006 Agreement, Aspen does not retain a
unilateral, unrestricted right to modify or terminate the arbitration provision
in that agreement; therefore, that arbitration provision, as a matter of law,
is not illusory.  See In re Dillard Dept. Stores, Inc., 186 S.W.3d
514, 516 (Tex. 2006) (holding that arbitration agreement did not give employer
unilateral, unrestricted right to modify the arbitration agreement).  The cases
on which Shasha relies are not on point.  See J.M. Davidson, Inc. v. Webster,
128 S.W.3d 223, 228B30 (Tex. 2003) (concluding that it was
unclear whether employer retained unilateral right to terminate arbitration
agreement without notice in case in which agreement stated that the employer Areserves the right
to unilaterally abolish or modify any personnel policy without prior notice@); In re C
& H News Co., 133 S.W.3d 642, 646 (Tex. App.CCorpus Christi
2003, orig. proceeding) (concluding agreement was illusory because it contained
provision giving employer the ability to modify or delete provisions as the
employer deems appropriate, with or without prior notification to employees); Tenet
Healthcare Ltd. v. Cooper, 960 S.W.2d 386, 386B88 (Tex. App.CHouston [14th
Dist.] 1998, pet. dism=d w.o.j.) (holding arbitration agreement
contained in employee handbook was not supported by consideration, in case in
which handbook stated that (1) it was not intended to constitute a legal
contract with any employee because that could only occur with a written
agreement executed by a facility executive director and (2) the employer
reserved the right to amend or rescind any provision of the handbook as it
deemed appropriate in its sole and absolute discretion).  Therefore, the trial
court clearly abused its discretion to the extent it concluded that the
arbitration clause in the 2006 Agreement is illusory.  

C.      Did the trial court err by concluding that the arbitration
clause in the 2006 Agreement is substantively unconscionable?

Shasha asserted in
the trial court that the arbitration clause in the 2006 Agreement  imposes such exorbitant costs on
him that it is substantively unconscionable.  Under certain circumstances,
arbitration costs could be so high that they preclude a litigant from
effectively vindicating his rights through arbitration.  See Green Tree Fin.
Corp. v. Randolph, 531 U.S. 79, 90B92, 121 S. Ct.
513, 522B23, 148 L.Ed.2d
373 (2000).  A party seeking to invalidate an arbitration agreement on the
ground that arbitration would be prohibitively expensive bears the burden of
providing specific evidence showing a likelihood that he would incur excessive
arbitration costs.  See Green Tree Fin. Corp., 531 U.S. at 90B92, 121 S. Ct. at
522B23; In re U.S.
Home Corp., 236 S.W.3d 761, 764 (Tex. 2007); In re FirstMerit Bank, N.A.,
52 S.W.3d 749, 756 (Tex. 2001); TMI, Inc. v. Brooks, 225 S.W.3d 783, 796
(Tex. App.CHouston [14th Dist.] 2007, pet. denied).   

The 2006 Agreement
is silent as to arbitration costs.  In the trial court Shasha offered an
affidavit from one of his lawyers.  In this affidavit, Shasha=s counsel
testifies, in pertinent part, to the following:

!       Based on his personal
knowledge of the Commercial Rules and the AAA employment arbitration rules (AEmployment Rules@), claims arbitrated under the
Commercial Rules are significantly more costly to the employee/claimant than
claims arbitrated under the Employment Rules.  This is because under the
Employment Rules, the employee/claimant is only responsible for a filing fee of
$50-150; whereas under the Commercial Rules, the employee/claimant is
responsible for the filing fee, the case service fee, and one-half of all the
arbitrator fees unless the arbitration agreement states otherwise.

 








!       The AAA=s filing fee for this case would be
$4,250, and the AAA case service fee would be $1,750.  The AAA administration
fee would be $325.  Although arbitrator fees vary for each arbitrator, a Amedian estimate@ is $305.50 per hour for each
arbitrator based on ten arbitrator resumes for the Boston area from the AAA
website.  A conservative estimate of total arbitrator fees based on four days
of work per arbitrator is $24,000 (32 hours x $250/hour per arbitrator).  

!       Shasha=s air fare and hotel costs for an
arbitration in Boston would be at least $2,700.

 

Presuming that
arbitrations under the Commercial Rules are significantly more costly than
arbitrations under the Employment Rules, this testimony alone does not provide
specific evidence as to Shasha=s likely costs to arbitrate under the 2006
Agreement.  Though Shasha=s counsel provides projected fees for
filing with the AAA, AAA case service, and AAA administration, this projection
is based on the premise that the AAA would administer the arbitration.[2] 
However, the arbitration provision in the 2006 Agreement does not require that
the AAA conduct or administer the arbitration; rather the provision states that
arbitration shall be Ain accordance with the [Commercial Rules].@  Under this
language, the AAA may administer the arbitration, but the parties are not
required to have the arbitration administered by the AAA.  See TMI, Inc.,
225 S.W.3d at 797.   Although
the party seeking to compel arbitration in TMI, Inc. presented evidence
that arbitration under the same arbitration provision was available by a
non-AAA arbitrator at a cost significantly lower that the costs of a AAA
arbitration, such proof is not necessary for Shasha to be required to make a
factual showing that the AAA would administer the arbitration. See Green Tree
Fin. Corp., 531 U.S. at 90 n.6, 121 S. Ct. at 522 n.6 (concluding that
party asserting substantive unconscionability could not carry her burden of
proof based on AAA fees unless she, made a factual showing, among other things,
that the AAA would administer the arbitration).  








As to arbitrator
fees, again, Shasha=s projected fees appear to be based on
fees charged by AAA arbitrators.  In addition, Shasha=s counsel
testifies that, under the Commercial Rules, absent agreement by the parties,
Shasha must pay half of the arbitrator fees.  However, under the Commercial
Rules attached to counsel=s affidavit, the arbitration panel in its
final award shall apportion the arbitration fees, expenses, and compensation
among the parties in such amounts as the panel determines is appropriate.  

We conclude that
the evidence is legally insufficient to support the trial court=s implied finding
that Shasha satisfied his burden of providing specific evidence showing a
likelihood that he would be denied access to arbitration based on excessive
arbitration costs.  See Green Tree Fin. Corp., 531 U.S. at 90B92, 121 S. Ct. at
522B23; In re U.S.
Home Corp., 236 S.W.3d at 764; In re FirstMerit Bank, N.A., 52
S.W.3d at 756B57; TMI, Inc., 225 S.W.3d at 796.  On the record before it, the only
finding the trial court could have made was that Shasha did not satisfy this
burden.  By impliedly ruling to the contrary, the trial court clearly abused
its discretion.








In addition, even
presuming that the AAA would administer the arbitration and that the
arbitration costs and fees would be allocated equally by the arbitration panel,
Shasha=s counsel
projected aggregate costs and fees of $30,325, which would make Shasha=s portion
$15,162.50.  Presuming that the extra expense of traveling to Boston for the
arbitration is $2,700 (the figure stated in the affidavit of Shasha=s counsel) the
total financial burden on Shasha would be $17,862.50.  However, Shasha is
asserting a claim of between $300,000 and $500,000, and Shasha=s base salary,
without commissions, when he entered into the 2006 Agreement was $120,000. 
Though Shasha provided his own affidavit, in which he states that the costs of
pursuing his claim through arbitration in Boston under the 2006 Agreement would
be extraordinary, oppressive, unaffordable, and would deprive him of the
opportunity to litigate his claim, these conclusory statements are legally
insufficient.  See, e.g., Green Tree Fin. Corp., 531 U.S. at 90 n.6, 121
S. Ct. at 522 n.6 (concluding that party=s unsupported
statement that she did not have the resources to pay the high costs of
arbitration was insufficient).  Shasha does state that he is currently paying
for the university studies of his three children and that since he stopped
working at Aspen he has been unable to find Aequivalent fixed
income work.@  However, we determine substantive unconscionability
based on the circumstances existing when the parties entered into the contract
in October 2005, and Shasha provided no evidence as to his finances or ability
to pay $17,862.50 at this time.[3] 
See In re FirstMerit Bank, N.A., 52 S.W.3d at 757. 

Under the
applicable standard of review, we conclude that the trial court clearly abused
its discretion by impliedly ruling that the arbitration clause in the 2006
Agreement is substantively unconscionable.[4]


                                                 IV. 
Conclusion








The Federal Act governs the arbitration clause in the 2006
Agreement.  Therefore, this court has mandamus jurisdiction to consider whether
the trial court erred in denying Aspen its contracted‑for arbitration rights under the 2006
Agreement.  The trial court clearly abused its discretion (1) by impliedly finding
that the arbitration clause in the 2006 Agreement is illusory; (2) by impliedly
finding that the clause is substantively unconscionable; and (3) by refusing to
order the parties to arbitrate the claims under the 2006 Agreement. 
Accordingly, we conditionally grant a writ of mandamus directing the trial
court to vacate its orders compelling arbitration under the 2001 Agreement and
to issue an order (1) compelling arbitration under the 2006 Agreement before a
three-arbitrator panel in Boston, Massachusetts, in accordance with the
Commercial Rules and (2)
staying the proceedings in the trial court pending completion of arbitration.  We are
confident the respected trial judge will comply with this opinion. Only in the
unlikely event she fails to do so will the writ issue.  Because we have granted
this mandamus relief, we dismiss Aspen=s interlocutory
appeal as moot.

 

 

 

/s/      Kem Thompson
Frost

Justice

 

 

 

Judgment
rendered and Opinion filed March 27, 2008.

Panel consists of
Chief Justice Hedges and Justices Anderson and Frost.









[1]   In 1992, addressing whether a party is entitled to
mandamus relief for wrongful denial of its arbitration rights under an agreement
subject to the Federal Act, the Texas Supreme Court concluded that the Texas
Act does not provide such a party the ability to assert an interlocutory
appeal.  See Jack B. Anglin, Inc. v. Tipps, 842 S.W.2d 266, 272B73 (Tex. 1992).  In 2006, the Texas Supreme Court
decided that such a party can file an interlocutory appeal of the trial court=s denial of a motion to compel arbitration under an
agreement governed by the Federal Act. See In re D. Wilson Const. Co.,
196 S.W.3d 774, 778B80 (Tex. 2006).  It might appear that Aspen is not
entitled to mandamus relief in this case because the Federal Act governs the
Agreement and, under In re D. Wilson Const. Co., Aspen has an adequate
remedy at law by interlocutory appeal.  See id.  However, the Texas
Supreme Court reaffirmed in  In re D. Wilson Const. Co. that mandamus
relief remains available when a party is erroneously denied its contracted‑for
arbitration rights under the Federal Act.  See In re D. Wilson Const. Co.,
196 S.W.3d at 780B81.  Therefore, we conclude that mandamus relief is
still potentially available to Aspen.  

  





[2]  Shasha=s
counsel attaches a copy of the Commercial Rules and the fee schedule for
arbitrations conducted by the AAA, but the AAA fee schedule is not part of the
Commercial Rules. 





[3]  In any event, Shasha did not provide specific
evidence in his affidavit that would prove his present ability to pay this
amount.





[4]  Shasha relies on In re Luna, 175 S.W.3d 315, 319 (Tex. App.CHouston [1st Dist.] 2004, orig.
proceeding [mand. pending]).  We are not bound by In re Luna, and, in
any event, in that case, there was evidence establishing that arbitration would
force the former employee to pay fees that amounted to one-half of his annual
compensation.  See In re Luna, 175 S.W.3d 315, 321 (Tex. App.CHouston [1st Dist.] 2004, orig.
proceeding [mand. pending]).  Therefore,  In re Luna is not on point.