Andrew C. DEWEY, Dewey Investment Partnership, Ltd., and A.C. Dewey & Company, Appellants,

v.

David WEGNER, Appellee.

No. 14–02–00985–CV.

Court of Appeals of Texas, Houston (14th Dist.).

June 22, 2004.

Robert Joseph Killeen and Robert L. Negrin, Houston, for appellants.

Dan Krocker, Houston, for appellees.

Panel consists of Justices ANDERSON and SEYMORE and Senior Chief Justice MURPHY.*

* Senior Chief Justice Paul C. Murphy sitting by assignment.

## OPINION

CHARLES W. SEYMORE, Justice.

Appellants, Andrew C. Dewey, Dewey Investment Partnership, Ltd., and A.C. Dewey & Company, appeal a summary judgment in favor of appellee, David Wegner, in his suit arising from his investment in the partnership. In four issues, appellants contend (1) the trial court erred by refusing to compel arbitration, (2) there is no evidence or insufficient evidence to support the summary judgment, (3) Wegner's claims are time barred under the Texas Securities Act, and (4) the trial court abused its discretion in setting the amount of security to supercede the judgment. Because the trial court erred by refusing to compel arbitration, we reverse and remand.

## I. BACKGROUND

Andrew C. Dewey is the president of A.C. Dewey & Company. A.C. Dewey & Company is the general partner of Dewey Investment Partnership, Ltd. The partnership issued a private placement memorandum offering units in the partnership for sale. In September 1996, Wegner purchased fifty units and executed a subscription agreement governing his purchase.[1] The subscription agreement contains the following provision:

> 2. *Arbitration.* Any controversy or claim arising out of or relating to this Subscription Agreement, an investment in the Partnership Units or a breach of the Subscription Agreement, or any claim or dispute between the parties to this Agreement (including disputes involving the General Partner of the Partnership or Andrew C. Dewey), shall be settled by arbitration in accordance with the Securities Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. All arbitration proceedings shall be held in Houston, Texas and all arbitrators shall be appointed by the American Arbitration Association under their rules.

Eventually, the partnership invested in an internet "dot.com" company despite Wegner's objection. In October 2001, he withdrew from the partnership and liquidated his interest after losses were attributed to this investment. Wegner sued the partnership, A.C. Dewey & Company, and Dewey personally (hereafter collectively "the Deweys") for violations of Texas and federal securities laws, fraud, deceit, breach of fiduciary duty, and rescission. In essence, he alleges the partnership, as comprised, was an illegal mutual fund because the Deweys were not licensed to sell securities, and the offering was not registered or exempt from registration under federal and state law. He also complains about the investment in the internet company because the partnership agreement provided for investments in initial public offerings.

The Deweys filed an application to compel arbitration, and after substitution of counsel, a supplemental application to compel arbitration. On August 20, 2002, the trial court denied the application to compel arbitration. Previously, Wegner had filed a motion for summary judgment. The trial court granted the motion for summary judgment on August 22, 2002 awarding Wegner $43,028.31 plus attorneys' fees, costs, prejudgment interest, and post-

---

1. The subscription agreement also gave the general partner authority to execute the partnership agreement on Wegner's behalf.

judgment interest. In response to the Deweys' motion for new trial, the trial court reopened the summary judgment evidence. After reviewing additional evidence, the trial court denied the motion for new trial. This appeal followed.

## II. APPLICATION TO COMPEL ARBITRATION

In their first issue, the Deweys contend the trial court erred in denying their application to compel arbitration.

### A. WHICH ARBITRATION ACT APPLIES?

■ Initially, we must decide which arbitration act governs this dispute. The Deweys cite both the Federal Arbitration Act ("FAA") and Texas Arbitration Act ("TAA") but primarily argue the FAA applies because performance of the subscription agreement involves interstate commerce. The Deweys contend the TAA applies because performance of the subscription agreement does not involve interstate commerce.

■ The FAA renders enforceable arbitration agreements in contracts "evidencing a transaction involving commerce." 9 U.S.C. § 2 (West 1999);[2] *see Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273–75, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995); *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 269–70 (Tex.1992) (orig.proceeding). "Commerce" is construed broadly and encompasses all contracts relating to interstate commerce. *See Jack B. Anglin Co.*, 842 S.W.2d at 269–70; *In re Tenet Healthcare, Ltd.*, 84 S.W.3d 760, 765

(Tex.App.-Houston [1st Dist.] 2002, orig. proceeding). The sale of securities has been held to involve interstate commerce. *See Eurocapital Group, Ltd. v. Goldman Sachs & Co.*, 17 S.W.3d 426, 430 (Tex.App.-Houston [1st Dist.] 2000, no pet.) (recognizing account agreement concerning sale of securities involved interstate commerce); *Thomas James Associates, Inc. v. Owens*, 1 S.W.3d 315, 319 (Tex.App.-Dallas 1999, no pet.) (same); *see also Williams v. Cigna Fin. Advisors*, 56 F.3d 656, 659 (5th Cir.1995) (reasoning U–4 Registration involved interstate commerce because it was contract involving sale of securities).

Here, the subscription agreement concerns the sale of securities. In the subscription agreement, Wegner agreed to purchase units of the partnership. The partnership agreement states that the partnership was formed "[t]o buy, sell and trade publicly traded common stocks and other publicly traded equity securities including convertible preferred stocks, convertible debt securities and foreign equity securities, to invest in fixed income securities, to invest monies in money market accounts and other liquid investments and engage generally in the stock, option trading, securities and investment business." Further, the subscription agreement incorporates the private placement memorandum which provides that the partnership will invest in publicly traded equity markets. Therefore, because the sale of securities is incorporated in the subscription agreement, it involves interstate commerce.[3]

---

**2.** Section 2 of the FAA provides "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract,

transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

**3.** Although Wegner now contends the subscription agreement *does not involve* interstate commerce, he pleaded in his petition that the Deweys "used the means and instrumentalities of interstate commerce, including

Nevertheless, Wegner contends the TAA is applicable because the subscription agreement contains a Texas choice-of-law clause. However, the FAA preempts otherwise applicable state law including the TAA. *See* U.S. CONST. art. VI, cl. 2; *Jack B. Anglin Co.*, 842 S.W.2d at 271; *Thomas James Associates*, 1 S.W.3d at 319. Further, a choice-of-law clause that does not specifically exclude application of federal law will not preclude application of the FAA. *See In re L & L Kempwood Associates, L.P.*, 9 S.W.3d 125, 127–28 (Tex.1999) (orig.proceeding) (holding FAA, not TAA, applied to arbitration dispute despite Texas choice-of-law clause because clause did not specifically exclude application of federal law); *In re Educ. Mgmt. Corp.*, 14 S.W.3d 418, 423 (Tex. App.-Houston [14th Dist.] 2000) (orig.proceeding) (citing *Kempwood* and noting choice-of-law provision that does not specifically exclude application of federal law cannot be read to have such an effect).[4] Therefore, the FAA governs this arbitration provision despite the choice-of-law clause because the clause does not specifically exclude application of federal law.[5]

### B. APPLICATION OF THE FAA

To compel arbitration under the FAA, a party must prove the existence of an arbitration agreement and that the subject claims fall within the scope of that agreement. *See In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex.2001) (orig.proceeding); *In re Media Arts Group, Inc.*, 116 S.W.3d 900, 904 (Tex. App.-Houston [14th Dist.] 2003, orig. proceeding [mand. denied]). Once the trial court concludes that the arbitration agreement encompasses the claims, and the opposing party has failed to prove any defenses to its enforcement, the trial court has no discretion but to compel arbitration and stay its own proceedings. *FirstMerit Bank*, 52 S.W.3d at 753–54; *Media Arts Group*, 116 S.W.3d at 904.

### 1. STANDARD OF REVIEW

Appellate courts ordinarily apply the abuse of discretion standard to orders denying arbitration under the FAA. *See, e.g., Jack B. Anglin Co.*, 842 S.W.2d at 272–73; *FirstMerit Bank*, 52 S.W.3d at 753–54; *Media Arts Group*, 116 S.W.3d at 904. However, courts have applied this standard because such orders are generally reviewed in mandamus proceedings. *See Jack B. Anglin Co.*, 842 S.W.2d at 272–73 (allowing mandamus review of orders denying arbitration under the FAA because interlocutory appeal is not allowed);[6] *see also, e.g., FirstMerit Bank*, 52 S.W.3d 749; *Media Arts Group*, 116 S.W.3d 900. Here, the Deweys challenge the order denying arbitration in their appeal from the final summary judgment.[7]

---

the United States mails" to commit the acts complained of.

4. *See also Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 59–60, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995) (recognizing choice-of-law clause, if read in isolation, is merely a substitute for conflict-of-laws analysis that otherwise would determine what law applies); *Capital Income Prop.-LXXX v. Blackmon*, 843 S.W.2d 22, 23 (Tex.1992) (orig.proceeding) (per curiam) (recognizing FAA *is* part of the substantive law of Texas).

5. The choice-of-law clause provides, "This agreement is made and performable in Harris County, Texas, shall be interpreted under the laws of the State of Texas . . ."

6. In contrast, interlocutory appeal is allowed from an order denying arbitration under the TAA. *See* TEX. CIV. PRAC. & REM CODE ANN. §§ 171.001, 171.098(a)(1) (Vernon Supp. 2004).

7. The summary judgment was signed two days after the order denying arbitration, obviating the need, or opportunity, for the Deweys to obtain mandamus relief from the order

Therefore, the abuse of discretion standard is not necessarily applicable.

■ However, even in a mandamus proceeding, whether an arbitration agreement is enforceable under the FAA is a question of law and reviewable de novo. *See In re Kellogg Brown & Root*, 80 S.W.3d 611, 615 (Tex.App.-Houston [1st Dist.] 2002, orig. proceeding) (citing *Tenet Healthcare Ltd. v. Cooper*, 960 S.W.2d 386, 388 (Tex.App.-Houston [14th Dist.] 1998, pet. dism'd w.o.j.)); *see also Kline v. O'Quinn*, 874 S.W.2d 776, 782 (Tex.App.-Houston [14th Dist.] 1994, writ denied) (stating whether an agreement imposes a duty to arbitrate a particular dispute is a matter of contract interpretation and a question of law for the court). In addition, when we review by interlocutory appeal an order denying arbitration under the TAA, which has similar requirements to the FAA,[8] we apply a "no evidence" standard to factual determinations and a de novo standard to legal determinations. *See Ikon Office Solutions, Inc. v. Eifert*, 2 S.W.3d 688, 693 (Tex.App.-Houston [14th Dist.] 1999), order, *disp. on merits*, 125 S.W.3d 113 (Tex.App.-Houston [14th Dist.] 2003, pet. denied).[9] Here, the facts relevant to the arbitration issue are not disputed, and we are presented only with ques-

tions of law. Therefore, we will review the trial court's order de novo.[10]

## 2. EXISTENCE OF AN ARBITRATION AGREEMENT

The Deweys attached the subscription agreement to their application to compel arbitration. The subscription agreement undisputably contains an arbitration provision. However, Wegner contends the subscription agreement is illegal because the Deweys were not licensed to sell securities and the offering was not registered or exempt from registration. Wegner argues the arbitration agreement is unenforceable because the entire contract containing the arbitration provision is void; therefore, the trial court correctly refused to compel arbitration. Citing *Prima Paint Corp. v. Flood & Conklin Manufacturing. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), the Deweys contend the trial court was required to submit Wegner's illegality defense to arbitration because Wegner does not limit his attack to the arbitration language in the agreement.

### a. PRIMA PAINT

In *Prima Paint*, the Court addressed whether a fraud in the inducement claim relative to a contract containing an arbitration provision must be resolved by the court or referred to the arbitrators. 388

denying arbitration before filing their appeal. *See Jack B. Anglin Co.*, 842 S.W.2d at 272–73 (recognizing the purpose of arbitration is to avoid the time and expense of a trial and appeal).

8. *See Ikon Office Solutions, Inc. v. Eifert*, 2 S.W.3d 688, 693 (Tex.App.-Houston [14th Dist.] 1999, order, *disp. on merits*, 125 S.W.3d 113 (Tex.App.-Houston [14th Dist.] 2003, pet. denied) (stating under TAA, court must decide whether valid, enforceable arbitration agreement exists, and whether claims asserted fall within the scope of the agreement).

9. *But see Leander Cut Stone Co. v. Brazos Masonry, Inc.*, 987 S.W.2d 638, 640 n. 2 (Tex.

App.-Waco 1999, order) (questioning applicability of "no evidence standard," explaining inconsistencies among courts on the applicable standard, and recognizing that the fact denial of arbitration under the FAA may be reviewed through a mandamus proceeding further complicates matters).

10. Even under the more stringent abuse of discretion standard, a trial court has no discretion in determining what the law is or applying the law to the facts. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992). Therefore, our resolution is the same regardless of which standard of review applies.

U.S. at 402, 87 S.Ct. 1801. The Court recognized that arbitration provisions are "separable" from the contracts in which they are included. *Id.* at 402–05, 87 S.Ct. 1801. Under this separability principle, a federal court may only consider issues relating to the making and performance of the arbitration agreement. *Id.* Thus, if the claim is fraud in the inducement of the arbitration provision itself, the court may adjudicate it. *Id.* at 403–04, 87 S.Ct. 1801. However, a claim of fraud in the inducement of the entire contract is subject to arbitration pursuant to the arbitration provision. *Id.*

Nevertheless, Wegner argues that *Prima Paint* is inapplicable. He asserts a distinction between fraud in the inducement, which makes a contract voidable, and fraud in the factum, which makes a contract void. *See* Jeffrey W. Stempel, *A Better Approach to Arbitrability*, 65 TUL. L.REV. 1377, 1399 (1991) (distinguishing between fraud in the inducement, in which consent to the contract is not at issue but consent was obtained through fraudulent representations, and fraud in the factum, which makes consent to the contract ineffective). Wegner contends *Prima Paint* requires arbitration when a party claims the entire contract is *voidable*, but not when a party claims the entire contract is *void*.

**b. FEDERAL COURTS APPLYING *PRIMA PAINT***

There is a conflict among federal circuit courts on the scope of *Prima Paint*. Some courts hold that even when a party claims an entire contract is void, the party must prove the arbitration agreement is invalid in order to avoid arbitration. *See, e.g., Lawrence v. Comprehensive Bus.*
*Serv. Co.*, 833 F.2d 1159, 1161–62 (5th Cir. 1987) (submitting illegality defense to arbitration because it did not specifically relate to arbitration clause); *C.B.S. Employees Fed. Credit Union v. Donaldson, Lufkin and Jenrette Sec. Corp.*, 912 F.2d 1563, 1567 (6th Cir.1990) (rejecting fraud in factum/inducement distinction and holding both claims are referable to arbitration if they do not attack the arbitration provision specifically); *Unionmutual Stock Life Ins. Co. of Am. v. Beneficial Life Ins. Co.*, 774 F.2d 524, 529 (1st Cir.1985) (stating court must not remove substantive challenges to a contract from the arbitrators' consideration regardless of the basis for the challenge unless there is an independent challenge to the arbitration clause itself).

On the other hand, other courts have refused to apply *Prima Paint* when a party claims the entire contract is void, as opposed to merely voidable, reasoning that the court must first decide the validity of the contract before the dispute can be submitted to arbitration. *See, e.g., Sphere Drake Ins. Ltd. v. All Am. Ins. Co.*, 256 F.3d 587, 591 (7th Cir.2001) (concluding that as arbitration depends on a valid contract, an argument that the contract does not exist cannot logically be resolved by the arbitrator); *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 107 (3d Cir.2000) (distinguishing between contracts asserted to be void or non-existent and those that are merely voidable); *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.*, 925 F.2d 1136, 1137–40 (9th Cir.1991) (holding *Prima Paint* applies to arbitration provisions in voidable contracts, but not arbitration provisions in contracts void from inception).[11]

---

11. *See also* Andre V. Egle, Note & Comment, *Back to Prima Paint Corp. v. Flood & Conklin Manufacturing Co.: To Challenge An Arbitration Agreement You Must Challenge The Arbi-* *tration Agreement*, 78 WASH. L.REV. 199 (2003) (discussing varying interpretations of *Prima Paint* by courts, particularly void-voidable distinction, and concluding arbitrators should

The Fifth Circuit recently clarified the scope of *Prima Paint* in *Will–Drill Resources, Inc. v. Samson Resources Co.,* 352 F.3d 211 (5th Cir.2003). Samson executed a proposed sales agreement to purchase mineral leases from Will–Drill and other sellers. *Id.* at 213. After several proposed sellers refused to sign, Samson withdrew the agreement. *Id.* Will–Drill and some sellers who had signed the agreement sued Samson seeking specific performance. *Id.* Although the agreement contained an arbitration clause, Samson opposed arbitration asserting that no agreement of any kind was reached because the agreement required the signature of all sellers before it was legally binding. *Id.* Applying *Prima Paint,* the district court ruled that Samson's challenge to the entire agreement must be decided by the arbitrators. *See id.* at 213–14.

On appeal, the Fifth Circuit refused to distinguish for purposes of applying *Prima Paint* between a claim that a contract is void and a claim that a contract is merely voidable. *Id.* at 215, n. 15.[12] The court held that where the parties have formed an agreement containing an arbitration clause, any attempt to have the entire agreement declared void or voidable is for the arbitrator. *Id.* at 218. Only if the arbitration clause is attacked on an independent basis can the court decide the dispute. *Id.* However, the court did distinguish a claim that a contract is void or voidable from an attack on the very existence of a contract.

[T]he separability doctrine rests on the assumption that there is an underlying agreement. That one of the parties later disputes the enforceability of that *agreement* does not change the fact that at some point in time, the parties reached an agreement, and that agreement included the decision to arbitrate disputes arising out of the agreement. The existence of this agreement provides the arbitrator with the authority required to decide whether the agreement will continue to exist. *Even if the arbitrator concludes that the agreement was void, and the parties are returned to their pre-agreement positions as if the agreement never existed, the agreement existed long enough to give the arbitrator the power to decide the dispute.* In contrast, where the very existence of an agreement is challenged, ordering arbitration could result in an arbitrator deciding that no agreement was ever formed. Such an outcome would be a statement that the arbitrator *never* had any authority to decide the issue .... where a party attacks the very existence of an agreement, as opposed to its continued validity or enforcement, the courts must first resolve that dispute.

*Id.* at 218–19 (citations omitted) (second emphasis added).[13] Therefore, because

resolve claim that a contract is void under separability doctrine); *but see* Joshua R. Welsh, Comment, *Has Expansion of the Federal Arbitration Act Gone Too Far?: Enforcing Arbitration Clauses in Void Ab Initio Contracts,* 86 Marq. L.Rev. 581 (2002) (discussing conflict on application of *Prima Paint* but urging United States Supreme Court to clarify that *Prima Paint* applies only where a valid contract actually exists).

**12.** The court rejected cases from other circuits which have made that distinction includ-

ing *Sphere Drake,* cited by Wegner. *See Will–Drill,* 352 F.3d at 215, n. 15 (citing *Sphere Drake,* 263 F.3d at 32).

**13.** The court also acknowledged some of its previous decisions refusing to compel arbitration despite a challenge to the entire contract because in those cases, the parties challenged the *very existence* of a contract. *Id.* at 215–16 (citing *Fleetwood Enter., Inc. v. Gaskamp,* 280 F.3d 1069 (5th Cir.2002) in which court decided children, who did not sign parents' contract, were not bound by arbitration agree-

Samson attacked the very existence of an agreement, instead of the continued validity or enforcement of an existing agreement, the district court was required to address its challenge. *Id.* at 219–20.

In contrast, Wegner does not attack the very existence of the subscription agreement. He does not contend the parties never entered into the subscription agreement in the first place.[14] Instead, he seeks to have the *existing* subscription agreement declared void as illegal. His illegality defense is similar to the defense raised in *Mesa Operating Ltd. Partnership v. Louisiana Intrastate Gas Corp.*, 797 F.2d 238 (5th Cir.1986). Mesa contracted, as agent, to sell gas belonging to the State of Louisiana to Louisiana Intrastate Gas (LIG). *Id.* at 240. The contract was performed satisfactorily by both parties until LIG ceased payments. *Id.* Mesa then invoked the arbitration provision in the contract. *Id.* LIG opposed arbitration asserting the entire contract was void *ab initio* because Mesa had failed to obtain state approval to sell the gas, as required by state law. *Id.*

The Fifth Circuit held that the dispute must be submitted to arbitration because LIG did not attack the validity of the arbitration agreement apart from the entire contract. *Id.* at 244 (citing *Prima Paint*, 388 U.S. at 398, 403–04, 87 S.Ct. 1801). The court reasoned that the worst result, if any, of Mesa's failure to obtain approval to sell gas would be Mesa's *inability to perform* the contract. *Id.* Later, in *Will–Drill*, the court validated its previous decision in *Mesa. See Will–Drill*, 352 F.3d at 219. Specifically, the *Will–Drill* court emphasized that the *Mesa* contract was performed satisfactorily by both parties for two years before LIG asserted it was void *ab initio* as illegal. *Id.* (citing *Mesa*, 797 F.2d at 240). Thus, the challenge in *Mesa* was to the continued viability of the agreement, rather than its very existence. *Id.*

 Similarly, Wegner performed under the subscription agreement for five years. Pursuant to the agreement, he purchased fifty units in the partnership. For some time, he profited substantially from this investment.[15] Even when he liquidated his investment, he realized a profit over his initial investment although the profit had diminished.[16] It was only

ment therein; *Jolley v. Welch*, 904 F.2d 988 (5th Cir.1990) as allowing court to resolve party's claim that signature on forms containing arbitration clause was forged). Further, the court acknowledged some of the cases from other circuits, cited by Wegner, in which courts refused to compel arbitration; however, the court noted that in those cases, a party attacked the *very existence* of a contract. *See id.* at 216, n. 26 (citing *Chastain v. Robinson–Humphrey Co.*, 957 F.2d 851 (11th Cir.1992), where one party never signed the contract containing the arbitration clause); *id.* at 216, n. 28 (citing *Sphere Drake*, 256 F.3d 587, where party contended that agent who signed the agreement lacked authority to bind the party; *Three Valleys*, 925 F.2d 1136, where individual who signed the agreements had no authority to bind the plaintiffs).

14. It is undisputed Wegner signed the subscription agreement, and he does not challenge his assent.

15. In their brief, the Deweys state that Wegner made a substantial profit, and Wegner does not dispute this fact. *See* Tex.R.App. P. 38.1(f) (providing in a civil case, we will accept as true a party's statement of facts unless another party contradicts them). Further, Wegner pleads in his petition and asserts in his brief that his initial $50,000 investment reached a high of $139,136.02, thereby acknowledging that he benefited from an existing agreement for some time.

16. Wegner pleads in his petition that his investment was worth $79,099.33 at liquidation, again acknowledging that he benefited from the agreement to some extent even at liquidation.

when the amount of his profit diminished that he sought to void the subscription agreement as illegal. Therefore, although Wegner asserts the subscription agreement is void *ab initio*, his illegality defense is actually a challenge to the continued validity and enforcement of the subscription agreement, and the Deweys' ability to perform, as opposed to its very existence. *See id; Mesa*, 797 F.2d at 244.[17] Under Fifth Circuit precedent, this type of defense must be submitted to arbitration. *See Will–Drill*, 352 F.3d at 218–19; *Mesa*, 797 F.2d at 244–45; *see also Lawrence*, 833 F.2d at 1161–62. Although we are not necessarily bound by the Fifth Circuit, as opposed to other circuits, even on federal issues, *see Penrod Drilling Corp. v. Williams*, 868 S.W.2d 294, 296 (Tex.1993) (per curiam), we agree with its reasoning, and its decisions are in line with Texas law applying the FAA.[18]

### c. TEXAS COURTS APPLYING *PRIMA PAINT*

Regardless of any disagreement among the federal courts, the Texas Supreme Court has applied *Prima Paint* to hold that the validity of an entire contract must be submitted to arbitration as long as the arbitration provision is valid. In *FirstMerit Bank*, home buyers asserted unconscionability, duress, fraudulent inducement, and revocation as defenses to arbitration despite an arbitration addendum to their installment contract. 52 S.W.3d at 756. The court noted that these defenses must specifically relate to the arbitration addendum, not the contract as a whole, if they are to defeat arbitration. *Id.* (citing *Prima Paint*, 388 U.S. at 403–04, 87 S.Ct. 1801). The homeowners argued that their alleged revocation of the installment contract *did* apply to the arbitration addendum rendering it unenforceable. In rejecting this argument, the court stated

> But this claim really pertains to the entire installment contract and not just the Arbitration Addendum. *Again, the Arbitration Addendum's validity is a separate issue from the validity of the whole contract.* And given that the FAA's primary objective is to encourage the arbitration of contract-related issues, the issue of whether the underlying contract was revoked is an issue that should be arbitrated, since it "arises from or relates to" the contract.

*Id.* at 758 (citations omitted) (emphasis added). While the court did not address who should decide whether an entire contract is *illegal*, per se, it clearly expressed that a challenge to the validity of the en-

---

17. *See also Bess v. Check Express*, 294 F.3d 1298, 1304–06 (11th Cir.2002) (holding customer's allegation that deferred payment transaction containing arbitration agreement was void under Alabama law because defendant check cashing company was not licensed to make transaction must be addressed by the arbitrator because customer challenged the contents, not the existence, of the contract); *Burden v. Check into Cash of Kentucky, LLC*, 267 F.3d 483, 489–90 (6th Cir.2001), *cert. denied*, 535 U.S. 970, 122 S.Ct. 1436, 152 L.Ed.2d 380 (2002) (holding plaintiffs' opposition to arbitration because loan contracts containing arbitration clause violated Kentucky law challenged the substance, rather than the existence, of the loan contracts).

18. Further, we *are* bound by the United States Supreme Court's decisions. *See Penrod*, 868 S.W.2d at 296. Wegner's defense is similar to the arbitration defense raised in *Prima Paint*, which was referable to arbitration, because he alleges he was fraudulently induced to enter into the subscription agreement by the Deweys' representations that they were licensed to sell the offering and it was properly registered. *See Prima Paint*, 388 U.S. at 398, 87 S.Ct. 1801 (stating plaintiff's principal contention was that defendant had fraudulently represented it was solvent and able to perform its contractual obligations when it was not).

tire contract should be decided by the arbitrators.

■ Finally, this court has recognized that when a party claims an entire contract containing an arbitration clause is illegal, the dispute should be submitted to arbitration. *See In re H.E. Butt Grocery Co.*, 17 S.W.3d 360, 367 (Tex.App.-Houston [14th Dist.] 2000, orig. proceeding). "As a general rule, 'questions related to the enforcement of a contract as a whole are properly referable to an arbitrator; it is only when attack is made on the arbitration clause itself that a court, rather than an arbitrator, should decide questions of validity.'" *Id.* (quoting *Prima Paint*, 388 U.S. 395, 402–04, 87 S.Ct. 1801, 18 L.Ed.2d 1270).

In sum, the Deweys established the existence of an arbitration agreement. Wegner's illegality defense to the entire subscription agreement must be submitted to arbitration because Wegner does not attack the arbitration agreement specifically.

### 3. CLAIMS WITHIN SCOPE OF ARBITRATION AGREEMENT

■ Next, we must determine whether Wegner's claims are within the scope of the arbitration agreement. Federal and state law strongly favor arbitration. *Cantella & Co., Inc. v. Goodwin*, 924 S.W.2d 943, 944 (Tex.1996); *Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 898 (Tex.1995) (orig.proceeding). Under the FAA, any doubts as to whether a plaintiff's claims fall within the scope of the arbitration agreement must be resolved in favor of arbitration. *Cantella & Co.*, 924 S.W.2d at 944; *Prudential Sec. Inc.*, 909 S.W.2d at 899. "[a] court should not deny arbitration

'*unless it can be said with positive assurance* that an arbitration clause is *not* susceptible of an interpretation which would cover the dispute at issue.'" *Prudential Sec. Inc.*, 909 S.W.2d at 899 (quoting *Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir.1990)). In determining whether a claim falls within the scope of an arbitration clause, we must focus on the factual allegations of the complaint, rather than the legal causes of action asserted. *Id.* at 900; *AutoNation USA Corp. v. Leroy*, 105 S.W.3d 190, 195 (Tex.App.-Houston [14th Dist.] 2003, orig. proceeding).

■ Wegner suggests that his claims are not within the scope of the arbitration agreement.[19] However, the arbitration agreement is quite broad and requires arbitration of any "claim arising out of or relating to this Subscription Agreement, an investment in the Partnership Units or a breach of the Subscription Agreement, or any claim or dispute between the parties to this Agreement." *See AutoNation USA Corp.*, 105 S.W.3d at 195–96 (recognizing language requiring arbitration of claims "arising out of or relating to" the particular contract is broad language favoring arbitration). Wegner's allegations that the partnership units amounted to an illegal mutual fund and the partnership made investments contrary to its purpose clearly arise out of or relate to his "investment in the Partnership Units." Further, because the subscription agreement governs Wegner's purchase of partnership units, his allegations arise out of or relate to the subscription agreement. *See Capital Income Prop.-LXXX v. Blackmon*, 843 S.W.2d 22, 23 (Tex.1992) (orig.proceeding) (holding partners' claims that partnership

---

**19.** Although Wegner does not specifically dispute that his claims fall within the scope of the arbitration agreement, he states, "The Subscription Agreement does not pertain to the litigation since the Appellants made investments outside the business purpose of the Partnership." Further, a movant must prove the claims fall within the scope of the arbitration agreement to compel arbitration under the FAA. Therefore, we will address whether the arbitration agreement covers Wegner's claims.

breached fiduciary duty in operating and managing the partnership, misrepresenting the financial health of the operation, and fraudulently inducing partners to invest in the partnership were within scope of clause requiring arbitration of claims "arising out of" or "relating to" the partnership agreement); *Hou–Scape, Inc. v. Lloyd,* 945 S.W.2d 202, 206 (Tex.App.-Houston [1st Dist.] 1997, orig. proceeding) (general contractor's allegations that subcontractor misrepresented its expertise, ability, and intent to perform and fraudulently induced general contractor into subcontract were arbitrable because they arose out of and related to subcontract). Therefore, Wegner's claims fall within the scope of the arbitration agreement.[20]

### III. CONCLUSION

The Deweys established the existence of an arbitration agreement and that Wegner's claims fall within the scope of the agreement. We find Wegner failed to establish any viable defenses to the arbitration provision.[21] Therefore, the trial court erred by refusing to compel arbitration. The Deweys' first issue is sustained.[22]

Accordingly, we reverse the trial court's judgment and remand this cause for further proceedings consistent with our opinion.

---

20. We note Wegner is pursuing statutory and tort claims. Nevertheless, they arise out of and relate to the subscription agreement and his investment in the partnership units. See (*FirstMerit Bank,* 52 S.W.3d at 754–56) (arbitration compelled because plaintiffs alleged tortious behavior related to financing contract containing arbitration clause); *In re Conseco Fin. Servicing Corp.,* 19 S.W.3d 562, 570 (Tex. App.-Waco 2000, orig. proceeding) (holding that broad provision requiring arbitration of any claims "arising from or relating to" the contract encompassed claimant's statutory and tort claims although not based on the formation, negotiation, terms, or performance of the contract).

21. Although Wegner raised unconscionability as a defense to the arbitration agreement in his opposition filed in the trial court, he has not briefed this defense on appeal.

22. Because of our disposition of the Deweys' first issue, we need not address their remaining issues.