Appeal Dismissed; Petition for Writ of Mandamus Conditionally Granted
and Memorandum Opinion filed September 8, 2005









Appeal Dismissed; Petition for
Writ of Mandamus Conditionally Granted and Memorandum Opinion filed September
8, 2005.

 

In The

 

Fourteenth Court of Appeals

___________

 

NO. 14-04-00819-CV

_______________

 

UNIVERSAL COMPUTER CONSULTING HOLDING, INC., 

UNIVERSAL COMPUTER CONSULTING, LTD. AND 

DEALER COMPUTER SERVICES, INC. Appellants

 

V.

 

HILLCREST FORD LINCOLN-MERCURY,
INC., Appellee

                                                                                                                                               


On Appeal from the 12th District Court

Walker County, Texas

Trial Court Cause No. 22,416

                                                                                                                                               


 

NO. 14-04-01103-CV

 

IN RE UNIVERSAL COMPUTER CONSULTING HOLDING, INC., 

UNIVERSAL COMPUTER CONSULTING, LTD. 

AND DEALER COMPUTER SERVICES, INC. 

Relators

 



 

ORIGINAL
PROCEEDING

WRIT
OF MANDAMUS

 



 








M E M O R A N D
U M   O P I N I O N

Relators, Universal Computer Consulting Holding, Inc. (AUCCH@), Universal Computer Consulting,
Ltd. (AUCC@), and Dealer Computer Services, Inc.
(ADCS@), filed a petition for writ of
mandamus and an interlocutory appeal from the trial court=s order denying their motion to
compel arbitration.  We conditionally
grant the petition for writ of mandamus and dismiss the interlocutory appeal.

I. 
Background

DCS provides
computer systems to automobile dealers nationwide.  Real Party in Interest, Hillcrest Ford
Lincoln-Mercury, Inc. (AHillcrest@), is an
automobile dealer in Huntsville, Texas. 
In 1996, DCS and Hillcrest entered into two contracts for the sale,
maintenance, and support of two computer systems: a Adealer management@ system
and a Acomputerized parts display@ system.[1]  Both contracts contain substantially similar
arbitration provisions as follows:

 

. . . all disputes, claims, controversies and other
matters in question between the parties to this Agreement, arising out of, or
relating to this Agreement, or to the breach thereof, including any claim in
which either party is demanding monetary damages of any nature including
negligence, strict liability or intentional acts or omissions by either party,
and which cannot be resolved by the parties, shall be settled by arbitration .
. .

 

The arbitration provisions also include various rules applicable to the
arbitration proceeding, which we will later discuss in more detail.








DCS and Hillcrest performed under the contracts for eight
years, and the contracts were amended numerous times to add equipment to the
systems.  However, in 2004, Hillcrest
sued DCS, UCCH, and UCC alleging violations of the Texas Deceptive Trade
Practices Act and seeking to rescind the contracts.[2]  In essence, Hillcrest alleges the equipment
is not what it was represented to be, the contracts involve unconscionable
prices and terms, and relators fraudulently induced Hillcrest to enter into the
contracts.  Relators filed a motion to
compel arbitration and stay or dismiss the suit.  After two hearings, the trial court entered
an order denying the motion to compel arbitration.  Specifically, the trial court found that the
arbitration provisions in both contracts are procedurally and substantively
unconscionable.

II. 
Standard of Review

All parties agree that the Federal Arbitration Act (AFAA@) governs this dispute because the
contracts involve interstate commerce.  See 9 U.S.C. ' 2 (West 1999); In re Halliburton
Co., 80 S.W.3d 566, 568 (Tex. 2002); In re Media Arts Group, Inc.,
116 S.W.3d 900, 905 (Tex. App.CHouston [14th Dist.] 2003, orig. proceeding [mand.
denied]).  To compel arbitration under
the FAA, a party must prove the existence of an arbitration agreement and that
the claims at issue fall within the scope of that agreement.  In re FirstMerit Bank, N.A., 52 S.W.3d
749, 753 (Tex. 2001); Media Arts Group, Inc., 116 S.W.3d at 904.  If the arbitration agreement encompasses the
claims at issue, and the opposing party has failed to prove any defenses to its
enforcement, the trial court has no discretion but to compel arbitration and
stay its own proceedings.  FirstMerit
Bank, N.A., 52 S.W.3d at 753B54; Media Arts Group, Inc.,
116 S.W.3d at 904.  When a trial court
erroneously denies a motion to compel arbitration under the FAA, the movant has
no adequate remedy at law and is entitled to mandamus relief.  FirstMerit Bank, N.A., 52 S.W.3d at
753; Media Arts Group, Inc., 116 S.W.3d at 904.[3]








In two interrelated issues, relators contend the trial court
abused its discretion by refusing to compel arbitration because relators proved
the existence of two arbitration agreements encompassing the claims at issue
and Hillcrest failed to prove its defenses to their enforcement.  In response, Hillcrest does not dispute the
existence of an arbitration agreement encompassing the claims at issue.  Instead, Hillcrest contends, and the trial
court found, that the arbitration provisions are procedurally and substantively
unconscionable.  In addition, Hillcrest
contends UCCH and UCC may not compel arbitration because they are not
signatories to the arbitration agreements.

III. 
Unconscionability








Under Texas law, the basic test for unconscionability is
whether, given the parties= general commercial backgrounds and the commercial needs of
the particular trade or case, the arbitration clause is so one‑sided that
it is unconscionable under the circumstances existing when the parties made the
contract.  FirstMerit Bank, N.A.,
52 S.W.3d at 757; AutoNation USA Corp. v. Leroy, 105 S.W.3d 190, 198
(Tex. App.CHouston [14th Dist.] 2003, orig.
proceeding).[4]  The purpose of this principle is to prevent
oppression and unfair surprise and not to disturb allocation of risks because
of superior bargaining power.  FirstMerit Bank, N.A., 52 S.W.3d at 757; AutoNation
USA Corp., 105 S.W.3d at 198. 
Unconscionability in the context of arbitration agreements involves two
aspects: (1) procedural unconscionability, which focuses on the circumstances
surrounding adoption of the arbitration provision; and (2) substantive
unconscionability, which focuses on fairness of the arbitration provision
itself.  Halliburton Co., 80
S.W.3d at 571; AutoNation USA Corp., 105 S.W.3d at 198.  The party opposing arbitration bears the
burden to prove unconscionability.  See
FirstMerit Bank, N.A., 52 S.W.3d at 756; AutoNation USA Corp., 105
S.W.3d at 198.  We conclude Hillcrest
failed to prove the arbitration provisions are procedurally or substantively
unconscionable.[5]

A.        Procedural
Unconscionability

Hillcrest contends the arbitration provisions are
procedurally unconscionable because  DCS
fraudulently induced Hillcrest to enter into the contracts by misrepresenting
that DCS was an affiliate of Ford Motor Co.[6]  Relators contend that this defense must be
referred to arbitration pursuant to the Aseparability@ principle.








Arbitration provisions are Aseparable@ from the contracts in which they are
included. Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S.
395, 402B04 (1967); Dewey v. Wegner,
138 S.W.3d 591, 598 (Tex. App.CHouston [14th Dist.] 2004, no pet.).  Under this principle, a court may only
consider defenses to the arbitration agreement itself when deciding whether to
compel arbitration.  See Prima Paint
Corp., 388 U.S. at 403B04; FirstMerit Bank, N.A., 52 S.W.3d at 756; Dewey,
138 S.W.3d at 598.  Defenses, such as
unconscionability and fraudulent inducement, to the contract as whole must be
referred to arbitration as long as the arbitration provision is valid.  See Prima Paint Corp., 388 U.S. at 403B04; FirstMerit Bank, N.A., 52
S.W.3d at 756; Dewey, 138 S.W.3d at 598.

Here, at most, Hillcrest raised a fraudulent inducement
defense to the contracts as a whole.  To
oppose relators= motion to compel arbitration, Hillcrest relied solely on the
contracts.  Both contracts identify the
seller as AFord Dealer Computer Services, Inc.@ 
In addition, the Adealer management@ system contract has the Ford Motor
Co. logo on the first page.  On appeal,
Hillcrest also refers to Aadmissions@ by relators= counsel at the hearings on the motions to compel
arbitration.  At the hearings, relators= counsel stated that when the
contracts were made, DCS was not part of Ford Motor Co. but was licensed to use
its name and logo, and DCS later changed its name from AFord Dealer Computer Services, Inc.@ to ADealer Computer Services, Inc.@ 
According to Hillcrest, the contracts and Aadmissions@ establish that DCS fraudulently
induced Hillcrest into Acontracting@ with DCS by misrepresenting that it was an affiliate of Ford
Motor Co.  However, this fraudulent
inducement defense to the contracts as a whole must be referred to arbitration.  See Prima Paint Corp., 388 U.S. at 403B04; FirstMerit Bank, N.A., 52
S.W.3d at 756; Dewey, 138 S.W.3d at 598.








Hillcrest presented no evidence that it was fraudulently
induced to enter into the arbitration provisions.  In fact, Hillcrest offered no evidence of the
circumstances surrounding adoption of the arbitration provisions.  In particular, Hillcrest presented no
evidence that DCS made any misrepresentations with respect to the arbitration
provisions.  See FirstMerit Bank, N.A.,
52 S.W.3d at 758 (rejecting home buyers= fraudulent inducement defense to
arbitration agreement because they presented no evidence sellers made any
material misrepresentations with respect to the arbitration agreement).  Further, Hillcrest did not offer any
evidence, such as affidavits or testimony from its own employees, to show that
it believed DCS was a Ford affiliate, much less any evidence that it
specifically agreed to the arbitration provisions because it believed DCS was a
Ford affiliate.  Hillcrest merely cites
its counsel=s argument at the hearings, but
argument of counsel is not evidence.[7]  See Kern v. Gleason, 840 S.W.2d
730, 734 (Tex. App.CAmarillo 1992, no pet.).[8]  Accordingly, Hillcrest failed to prove the
arbitration provisions are procedurally unconscionable because they were
induced by fraud.

B.        Substantive
Unconscionability

Hillcrest contends the arbitration provisions are
substantively unconscionable because they (1) contain a Michigan forum
selection clause and Michigan choice of law clause, (2) limit Hillcrest=s remedies while allowing DCS to pursue
all remedies, (3) shorten the statute of limitations, and (4) potentially
impose prohibitive arbitration costs. 
Hillcrest suggests that even if the arbitration provisions are not
substantively unconscionable for any of these individual reasons, they are
substantively unconscionable as a whole.

1.         Forum
Selection Clause and Choice of Law Clause








Primarily, Hillcrest asserts the arbitration provisions are
substantively unconscionable because they contain a forum selection clause
requiring that the arbitration proceeding be held in Detroit, Michigan and a
Michigan choice of law clause.  Hillcrest
argues the forum selection clause and choice of law clause in tandem deprive
Hillcrest of statutory consumer protection remedies because the Texas DTPA will
not apply and Hillcrest lacks consumer status under Michigan consumer
protection laws.  However, contrary to
Hillcrest=s assertion, only the forum selection
clause is specifically contained in the arbitration provisions.  The choice of law clause is written into the
general provisions of each contractCnot the arbitration provisions.  Therefore, the trial court could consider
only Hillcrest=s challenge to the forum selection
clause in the arbitration provisions when deciding whether to compel
arbitration.  See Prima Paint Corp.,
388 U.S. at 403B04; FirstMerit Bank, N.A., 52 S.W.3d at 756; Dewey,
138 S.W.3d at 598.

The forum selection clause does not deprive Hillcrest of any
statutory remedies; it merely requires that the arbitration proceeding
physically take place in Michigan.  See
Accelerated Christian Educ., Inc. v. Oracle Corp., 925 S.W.2d 66, 74 n.11
(Tex. App.CDallas 1996, no writ) (rejecting
argument that enforcing California forum selection clause would deprive party
of rights under the Texas DTPA because enforcing a forum selection clause does
not automatically determine the law applicable to the case).[9]  If Hillcrest is deprived of any statutory
remedies, it is solely by virtue of the Michigan choice of law clause.  See id.  Because the choice of law clause is contained
in the general contract provisions, Hillcrest=s challenge to the application of
Michigan law pertains to the contracts as a whole and, thus, must be referred
to arbitration.  See Prima Paint Corp.,
388 U.S. at 403B04; FirstMerit Bank, N.A., 52 S.W.3d at 756; Dewey,
138 S.W.3d at 598.








Hillcrest also suggests that the forum selection clause alone
renders the arbitration provisions substantively unconscionable because DCS and
Hillcrest are both currently located in Texas, and, thus, arbitrating in
Michigan will be unduly burdensome.[10]  We disagree. 
The Texas Supreme Court recently recognized the validity of forum
selection clauses in general, adopting the ABremen standard@ set forth by the United States
Supreme Court.  See In re AIU Ins. Co.,
148 S.W.3d 109, 111B14 (Tex. 2004) (citing The Bremen v. Zapata Off‑Shore
Co., 407 U.S. 1, 13B17 (1972); Carnival Cruise Lines, Inc. v. Shute, 499
U.S. 585, 595B96 (1991)); see also In re
Automated Collection Techs., Inc., 156 S.W.3d 557, 559 (Tex. 2004) (per
curiam).  A forum selection clause must
be enforced unless the party opposing enforcement A>clearly show[s] that enforcement
would be unreasonable and unjust, or that the clause was invalid for such reasons
as fraud or overreaching.=@ 
See AIU Ins. Co., 148 S.W.3d at 112 (quoting The Bremen,
407 U.S. at 15); see also Automated Collection Techs., Inc., 156 S.W.3d
at 559.  A clause would come within these
exceptions if enforcement would contravene a strong public policy of the forum
in which suit was brought, or when the contractually selected forum would be
seriously inconvenient for trial.  AIU
Ins. Co., 148 S.W.3d at 112 (citing The Bremen, 407 U.S. at 15B17). 
When inconvenience in litigating in the chosen forum is foreseeable at
the time of contracting, the party opposing enforcement bears a A>heavy burden=@ to show A>trial in the contractual forum will
be so gravely difficult and inconvenient that he will for all practical
purposes be deprived of his day in court.=@  See id. at 113 (quoting The Bremen,
407 U.S. at 17B18).








Although the Texas Supreme Court upheld the validity of forum
selection clauses in general, the Fifth Circuit has upheld the validity of
forum selection clauses in arbitration agreements as well.  See, e.g., Carter v. Countrywide
Credit Indus., Inc., 362 F.3d 294, 298B301 (5th Cir. 2004); Sam Reisfeld
& Son Import Co. v. S. A. Eteco, 530 F.2d 679, 680B81 (5th Cir. 1976).  However, it is unclear whether the ABremen standard@ applies when determining the
validity of an arbitration provision containing a forum selection clause.  Recently, the Fifth Circuit effectively
applied the ABremen standard@ by holding that a forum selection
clause did not invalidate an arbitration agreement because the party opposing
arbitration failed to show the forum selection clause was unreasonable.  See Carter, 362 F.3d at 298B301. 
In contrast, the court earlier held that a party may not invoke
the Bremen exceptions to vitiate an arbitration provision containing a
forum selection clause.  See Sam
Reisfeld & Son Import Co., 530 F.2d at 680B81. 
The court reasoned that a party must meet a stricter standard to avoid
an arbitration provision than simply proving the chosen forum is unreasonable
or inconvenient because the FAA allows a party to avoid an arbitration
agreement only by proving a defense sufficient to revoke any contract.  See id. (citing 9 U.S.C. ' 2).

Here, Hillcrest asserts Ainconvenience@ of the chosen forum as part of its
substantive unconscionability defense, and substantive unconscionability is a
valid defense to an arbitration provision. 
Regardless, we need not decide whether the ABremen standard@ applies to a forum selection clause
in an arbitration agreement because Hillcrest cannot meet the ABremen standard,@ much less its burden to prove
unconscionability as a whole. 
Specifically, Hillcrest offered no evidence that arbitrating in Michigan
will be so inconvenient or burdensome that it will effectively be Adeprived of its day in court.@ 
Further, Hillcrest offered no evidence of the parties= general commercial backgrounds and
the commercial needs of the particular trade or case to show that requiring
Hillcrest to arbitrate in Michigan is unconscionable in light of the
circumstances existing when the parties made the arbitration agreements.  See FirstMerit Bank, N.A., 52 S.W.3d
at 757; AutoNation USA Corp., 105 S.W.3d at 198.  Accordingly, Hillcrest failed to prove that
the Michigan forum selection clause renders the arbitration provisions
unconscionable.

2.         Limitation of
Remedies








Hillcrest also argues that the arbitration provisions are
unconscionable because they limit or bar Hillcrest=s remedies while allowing DCS to
pursue all remedies.  In particular, the
contracts disclaim certain warranties, limit DCS=s liability, and limit damages.  The contracts also contain a ADefault@ section that allows DCS to A[p]ursue any additional or
alternative remedies available at law or in equity@ in the event of Hillcrest=s default.  Further, the ADefault@ section gives DCS the right to
recover attorneys= fees.  However, these
clauses limiting Hillcrest=s remedies and allowing DCS to pursue all remedies are
contained throughout the contract and are not particular to the arbitration
provisions.  Accordingly, Hillcrest=s complaint pertains to the contracts
as a whole and is, thus, subject to arbitration.[11]  See Prima Paint Corp., 388 U.S. at 403B04; FirstMerit Bank, N.A., 52
S.W.3d at 756; Dewey, 138 S.W.3d at 598.

3.         Shortened
Statute of Limitations

Hillcrest also contends the arbitration provisions are
unconscionable because they shorten the statute of limitations applicable to
DTPA claims from two years to one year.  See
Tex. Bus. & Com. Code Ann.
' 17.565 (Vernon 2002) (establishing
two-year statute of limitations for DTPA claims).  The arbitration provisions state, A[i]n no event shall the demand for
arbitration be made more than one (1) year after the claim or cause of action
arises.@[12]








Initially, we question whether this time limit can be
construed as a statute of limitations. 
In particular, we question whether this time limit bars any claims
accruing more than one year before arbitration is demanded or merely ensures
that arbitration is promptly demanded. 
Nonetheless, the interpretation and application of a clause requiring
that arbitration be initiated within a certain time period is a question for
the arbitrators.  See Howsam v. Dean
Witter Reynolds, Inc., 537 U.S. 79, 81B86 (2002); see also Bowie v.
Edison Sec. Corp., No. Civ. 300CV2700H, 2001 WL 1076128, at *3 (N.D. Tex.
Sept. 11, 2001) (not designated for publication) (referring to arbitrators the
issue of whether arbitration clause=s requirement that arbitration be
initiated within one year of the claim giving rise to the dispute acted as a
time bar or as a means of encouraging quick claim resolution).  We need only consider whether this time limit
renders the arbitration provisions unconscionable.  We conclude that even if this time limit can
be construed as a statute of limitations, it does not render the arbitration
provisions unconscionable.

Hillcrest cites no Texas law holding that an arbitration
provision which shortens a statute of limitations is per se
unconscionable.  Further, we have found
very little Texas law addressing the enforceability of an arbitration provision
which shortens a statute of limitations. 
In EZ Pawn Corp. v. Mancias, the Texas Supreme Court upheld an
arbitration agreement in which an employer and employee  mutually agreed to initiate arbitration no
later than 180 days after a cause of action accrues.  934 S.W.2d 87, 88B91 (Tex. 1996) (per curiam).  However, the court considered this time limit
when determining whether the employer waived its right to compel
arbitration.  See id. at 89B90.[13]  Although the court later determined the
arbitration provision was not unconscionable, the court did not consider the
time limit with respect to the unconscionability issue.  See id. at 90B91. 
Nevertheless, the court acknowledged the time limit when requiring the
employee to arbitrate a statutory claim. 
See id. at 89B90.








In In re Luna, the First Court of Appeals considered
an arbitration provision which shortened the limitations period for an employee
to assert a statutory wrongful discharge claim from two years to one year.  No. 01‑03‑01055‑CV, 2004 WL
2005935, at *7 (Tex. App.CHouston [1st Dist.] Sept. 9, 2004, orig. proceeding [mand.
pending]).  The court stated that the
shortened limitations period did not render the arbitration provision
substantively unconscionable although the court ultimately found the
arbitration provision was substantively unconscionable for other reasons.  See id.  The court interpreted EZ Pawn Corp.
as allowing Athe statute of limitations to be modified in an arbitration
agreement involving a claim of wrongful discharge.@  Id. (citing EZ Pawn Corp., 934
S.W.2d at 89).[14]

Consequently, the limited Texas authority on this issue
supports a conclusion that a shortened statute of limitations will not
necessarily render an arbitration provision unconscionable.  Again, here, Hillcrest presented no evidence
that this one-year time limit is unconscionable in light of the parties= general commercial backgrounds, the
commercial needs of the particular trade or case, or the circumstances existing
when the parties made the arbitration agreements.  See FirstMerit Bank, N.A., 52 S.W.3d at
757; AutoNation USA Corp., 105 S.W.3d at 198.[15]

4.         Arbitration
Costs 

Finally, Hillcrest suggests the arbitration provisions are
substantively unconscionable because Hillcrest will potentially incur
exhorbitant arbitration costs.  Excessive
arbitration costs could preclude a litigant from vindicating its statutory
rights.  FirstMerit Bank, N.A., 52
S.W.3d at 756 (citing Green Tree Fin. Corp. v. Randolph, 531 U.S. 79, 90
(2000)).  Nonetheless, an arbitration
agreement=s mere silence with respect to costs
is a A>plainly insufficient=@ basis for invalidating the
agreement.  Id. (quoting Green
Tree Fin. Corp., 531 U.S. at 91). 
Instead, the party opposing arbitration must prove the likelihood of
incurring such substantial costs.  Id.
(citing Green Tree Fin. Corp., 531 U.S. at 92).  Although it is not established how detailed
the evidence must be, some specific information of future costs is required. See
id. (citing Green Tree Fin. Corp., 531 U.S. at 92).








Here, the arbitration provisions are silent as to the costs
of arbitration.[16]  Hillcrest presented no evidence of the
potential arbitration costs or its ability to pay the arbitration costs.  Accordingly, Hillcrest failed to prove that
potentially exhorbitant arbitration costs render the arbitration provisions
substantively unconscionable.  See id.
at 756B57 (holding possibility that
arbitration could subject home buyers to substantial costs did not make the
arbitration agreement unconscionable without specific evidence buyers would be
charged excessive costs); see also Bloxom v. Landmark Publ=g Corp., 184 F. Supp. 2d 578, 584B85 (E.D. Tex. 2002) (refusing to
invalidate arbitration provision where opposing parties presented no evidence
of likelihood they would incur prohibitive costs).

In sum, the arbitration provisions are not substantively
unconscionable for any of the individual reasons urged by Hillcrest.  Moreover, without any evidence of the extant
circumstances when the parties made the arbitration agreements, we cannot
conclude they are substantively unconscionable as a whole.  See Pony Express Courier Corp. v.
Morris, 921 S.W.2d 817, 822 (Tex. App.CSan Antonio 1996, no writ) (stating
court could not ascertain whether portions of arbitration agreement which
excluded other remedies, eliminated discovery, limited damages, limited choice
of arbitrators, and allocated costs equally between parties, together rendered
agreement unconscionable without any evidence of circumstances surrounding the
agreement).

IV. 
Non-Signatories= Right To
Compel Arbitration








Hillcrest also contends that UCCH and UCC may not compel
arbitration because they are not signatories to the contracts.[17]  We disagree. 
Equitable estoppel allows non‑signatories to compel arbitration in
two circumstances: (1) when the signatory to the contract containing an
arbitration clause raises allegations of substantially interdependent and
concerted misconduct by both the non‑signatories and a signatory, or (2)
when the nature of the underlying claims requires the signatory to rely on the
terms of the written agreement containing the arbitration clause in asserting
the signatory=s claims against the non‑signatories.  McMillan v. Computer Translation Sys.
& Support, 66 S.W.3d 477, 482 (Tex. App.CDallas 2001, orig. proceeding)
(citing Grigson v. Creative Artists Agency, L.L.C., 210 F.3d 524, 527
(5th Cir. 2000)); see In re EGL Eagle Global Logistics, L.P., 89
S.W.3d 761, 764B65 (Tex. App.CHouston [1st Dist.] 2002, orig. proceeding).

We find that at least the first circumstance is satisfied
here.  In its petition, Hillcrest raises
allegations of Asubstantially interdependent and concerted misconduct@ by DCS, UCCH, and UCC.  Although Hillcrest occasionally makes some
factual allegations against DCS only, Hillcrest makes no independent factual
allegations against UCCH and UCC. 
Further, Hillcrest asserts all its legal causes of action against the ADefendants@ collectively and  asserts no independent legal causes of action
against UCCH and UCC.  Consequently, UCCH
and UCC may compel arbitration although they are not signatories to the
arbitration agreements.  See Jureczki
v. Banc One Texas, N.A., 252 F. Supp. 2d 368, 375B78 (S.D. Tex.), aff=d, 75 Fed. Appx. 272 (5th Cir. 2003) (ruling
nonsignatories could compel arbitration because plaintiffs= factual and legal allegations were
asserted against nonsignatories and signatories collectively as Adefendants@ and did not distinguish between
signatories and nonsignatories); In re Educ. Mgmt. Corp., 14 S.W.3d 418,
424B25 (Tex. App.CHouston [14th Dist.] 2000, orig.
proceeding) (holding non-signatories could compel arbitration where plaintiffs
alleged claims against signatory and nonsignatories collectively, alleged alter
ego claims against signatory and nonsignatories, and raised no independent
basis for liability against nonsignatories).








V. 
Conclusion

In sum, relators proved the existence of two arbitration
agreements that encompass Hillcrest=s claims, and Hillcrest failed to
prove any defenses to their enforcement. 
Therefore, the trial court abused its discretion by refusing to compel
arbitration, and mandamus relief is appropriate.  See FirstMerit Bank, N.A., 52
S.W.3d at 753B54; Media Arts Group, Inc.,
116 S.W.3d at 904.  Accordingly, we
sustain relators= first and second issues. 
We are confident the trial court will vacate its order denying Relators= motion to compel arbitration and
will compel arbitration of this suit and stay its own proceedings.  If the trial court fails to do so, the writ
will issue.  Because we conditionally
grant relators= petition for writ of mandamus, we
dismiss their interlocutory appeal.

 

 

 

/s/        Charles W. Seymore

Justice

 

Appeal Dismissed; Petition for Writ of Mandamus
Conditionally Granted and Memorandum Opinion filed September 8, 2005.

 

Panel consists of Justices Edelman, Seymore, and
Guzman.

 

 











[1]  DCS originally
entered into the contracts with Moore-Henry Motors, Inc., Hillcrest=s predecessor- in-interest.  In 1996, Moore-Henry Motors, Inc. assigned
both contracts to Hillcrest, and Hillcrest assumed Moore-Henry=s obligations under the contracts.





[2]  The record
does not establish the relationship between DCS and the other relators, UCCH
and UCC.  However, Hillcrest alleges the
same causes of action against all the relators.





[3]  In contrast,
interlocutory appeal is allowed from an order denying arbitration under the
Texas Arbitration Act.  See Tex. Civ. Prac. & Rem. Code Ann. ' 171.098(a)(1) (Vernon Supp. 2004B05).  Relators
have alternatively filed an interlocutory appeal in the event the Texas act
applies.  Because the FAA governs this
dispute, we will review the trial court=s order
via the mandamus proceeding.





[4]  The contracts
contain a Michigan choice of law clause. 
As we will discuss, Hillcrest cites Michigan consumer protection
statutes to support its claim that the arbitration provisions are
unconscionable because application of Michigan law will deprive Hillcrest of
statutory remedies.  However, neither
party asked the trial court to apply, or take judicial notice, of Michigan law
on unconscionability in general. 
Therefore, we will apply Texas law. 
See  Burns v. Resolution
Trust Corp., 880 S.W.2d 149, 151 (Tex. App.CHouston
[14th Dist.] 1994, no writ) (recognizing that absent request to take judicial
notice, or proper proof of laws of another state, Texas courts presume the
sister state=s law is the same as Texas law); see Media Arts
Group, Inc., 116 S.W.3d at 906 (recognizing generally applicable state
contract defenses may invalidate an arbitration agreement without contravening
the FAA).





[5]  Hillcrest
argues that we may not disturb the trial court=s ruling
because we may not decide factual disputes in a mandamus proceeding.  See Brady v. Fourteenth Court of Appeals,
795 S.W.2d 712, 714 (Tex. 1990). 
However, there were no factual disputes because Hillcrest presented no
evidence other than referring to the contracts. 
Therefore, whether Hillcrest proved the arbitration provisions are
unconscionable is a question of law.  See
In re Turner Brothers Trucking Co., 8 S.W.3d 370, 377 (Tex. App.CTexarkana 1999, orig. proceeding).  Our review of the trial court=s legal conclusions is less deferential because a
trial court has no discretion to misapply the law to the facts.  See Walker v. Packer, 827 S.W.2d 833,
840 (Tex. 1992).





[6]  We note that
fraudulent inducement is typically a separate defense from procedural
unconscionability.  See, e.g., FirstMerit
Bank, N.A., 52 S.W.3d at 756B58; In
re Oakwood Mobile Homes, Inc., 987 S.W.2d 571, 573B74 (Tex. 1999). 
However, Hillcrest incorporates its fraudulent inducement defense into
its procedural unconscionability defense.





[7]  Hillcrest
asserts that it presented evidence of the parties= Adealings@ but
merely cites to the transcript of the hearings. 
At the hearings, Hillcrest=s
counsel repeatedly argued that Hillcrest thought DCS was a Ford affiliate.





[8]  Hillcrest also
asks us to take judicial notice of a jury verdict in a different case finding
that another Ford dealership was fraudulently induced into an arbitration
agreement by DCS.  We decline to do so
because unconscionability must be determined on a case-by-case basis.  See Pony Express Courier Corp. v.
Morris, 921 S.W.2d 817, 821 (Tex. App.CSan
Antonio 1996, no writ.).





[9]  Hillcrest
cites In re Luna, in which the court found that an arbitration agreement
which precluded punitive damages and remedies allowed by workers compensation
law was unconscionable.  See No.
01‑03‑01055‑CV, 2004 WL 2005935, at *5B7 (Tex. App.CHouston
[1st Dist.] Sept. 9, 2004, orig. proceeding [mand. pending]).  However, Luna is distinguishable
because there the preclusion of remedies was specifically contained in the
arbitration agreement.  See id.  Further, the Luna court found the
arbitration agreement unconscionable as a whole based on the circumstances of
the particular case.  See id. at
*9B11.





[10]  Hillcrest also
asserts that Aevery aspect@ of
performance under the contracts occurred in Texas, and Michigan has Aabsolutely no connection to this case.@  To the
contrary, DCS was located in Michigan when the contracts were first executed,
when they were assigned to Hillcrest, and when some amendments were
executed.  However, several years after
the contracts were executed, the amendments began showing that DCS is located
in Houston.  DCS=s counsel confirmed at the hearings that DCS=s principle place of business is now in Houston.





[11]  We note that
each arbitration provision provides that the Aarbitration
procedure shall in no way limit [DCS=s]
remedies as provided in@ the ADefault@ section
of the contract.  Nonetheless, Hillcrest=s complaint is not an attack on the arbitration
provisions specifically.  Although the
arbitration provisions recognize DCS=s
remedies in the event of default, DCS=s right
to pursue all remedies is not unique to the arbitration provisions.  More importantly, there are no limitations on
Hillcrest=s remedies in the arbitration provisions. 





[12]  We question
whether this argument pertains to the arbitration provisions specificallyCas opposed to the contracts as a whole.  The contracts contain a general provision
stating that A[n]o action, regardless of form, arising out of
transactions under [the contracts], may be brought by either party more than
one year after the cause of action has occurred.@  Consequently, the contracts impose a one-year
time limit for raising claims, regardless of how they are resolved.  Nonetheless, because there is a time limit
for specifically demanding arbitration, we will address Hillcrest=s argument.





[13]  The court
rejected the employee=s contention that the employer=s delay in seeking to compel arbitration prejudiced
the employee by causing him to miss the 180-day deadline for requesting
arbitration.  See id. at 89B90.





[14]  However, Luna
has not yet been published, and a mandamus has been filed in the Texas Supreme
Court.  See generally 2004 WL
2005935.





[15]  Further, we
note that the time limit applies to both parties= demand
for arbitration; thus, the requirement is not one-sided.





[16]  The provisions
mention only that if a party=s delay in scheduling arbitration causes increased
costs, that party will bear those costs. 
Otherwise, the provisions are silent as to ordinary arbitration costs.





[17] On one hand, Hillcrest asserts the trial court did
not address this issue, and, thus, it is not ripe for our consideration.  On the other hand, Hillcrest suggests we may
uphold the trial court=s ruling notwithstanding the unconscionability finding
because UCCH and UCC are not signatories to the arbitration provisions;
therefore, we will consider this issue.